# Nos. 19-267 (L), 19-275 (con.)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

STATE OF NEW YORK, STATE OF CONNECTICUT, STATE OF NEW JERSEY, STATE OF WASHINGTON, COMMONWEALTH OF MASSACHUSETTS, COMMONWEALTH OF VIRGINIA, STATE OF RHODE ISLAND, CITY OF NEW YORK,

Plaintiffs-Appellees,
*(Caption continued on inside cover.)*

On Appeal from the United States District Court
for the Southern District of New York

## REPLY BRIEF FOR APPELLANTS UNITED STATES
## DEPARTMENT OF JUSTICE, WILLIAM P. BARR

JOSEPH H. HUNT
*Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*

v.

UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM P. BARR, in his official capacity as Attorney General of the United States,

Defendants-Appellants.

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ................................................................1

ARGUMENT ..................................................................................................3

I.      The Notice And Access Conditions Are Authorized By Statute ..........................3

II.     The § 1373 Certification Condition For FY 2017 Is Valid And Raises No Tenth Amendment Concerns ................................................................. 11

       A.      The § 1373 Certification Condition Is Statutorily Authorized ................11

       B.      The § 1373 Certification Condition Is Constitutional as a Funding Condition, and § 1373 Raises No Tenth Amendment Concerns Even as a Standalone Statute ......................................................15

III.     There Is No Other Basis For Setting Aside The Conditions ............................ 22

CONCLUSION ............................................................................................ 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*American Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003) ...................................................................17

*American Sur. Co. of N.Y. v. Marotta*,
   287 U.S. 513 (1933) ...........................................................................5

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ..........................................................................17

*Bennett v. Kentucky Dep't of Educ.*,
   470 U.S. 656 (1985) ..........................................................................14

*City of Chicago v. Sessions*,
   264 F. Supp. 3d 933 (N.D. Ill. 2017) ...................................................11

*City of New York v. United States*,
   179 F.3d 29 (2d Cir. 1999) ............................................................ 18, 20

*City of Philadelphia v. Attorney Gen.*,
   916 F.3d 276 (3d Cir. 2019) ........................................................... 7, 12

*Dalton v. Specter*,
   511 U.S. 462 (1994) ..........................................................................22

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) ..........................................................................14

*Ely v. Velde*,
   451 F.2d 1130 (4th Cir. 1971)............................................................24

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
   452 U.S. 264 (1981) ..........................................................................19

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat.) 316 (1819).............................................................20

ii

*Murphy v. National Collegiate Athletic Association,*
    138 S. Ct. 1461 (2018) ........................................................................18

*Padavan v. United States,*
    82 F.3d 23 (2d Cir. 1996) ..................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman,*
    451 U.S. 1 (1981) .........................................................................14, 15

*Pension Benefit Guar. Corp. v. LTV Corp.,*
    496 U.S. 633 (1990) ..........................................................................10

*Perez v. Campbell,*
    402 U.S. 637 (1971) ..........................................................................20

*Printz v. United States,*
    521 U.S. 898 (1997) ...............................................................20, 21, 22

*South Dakota v. Dole,*
    483 U.S. 203 (1987) .......................................................................15, 16

*United States v. Atlantic Research Corp.,*
    551 U.S. 128 (2007) .............................................................................4

*United States v. Rybicki,*
    354 F.3d 124 (2d Cir. 2003) ..........................................................15, 17

*United States v. Wise,*
    370 U.S. 405 (1962) ..........................................................................10

**Statutes:**

Coastal Zone Management Act of 1972,
    Pub. L. No. 92-583, 86 Stat. 1280 ....................................................13

Historical and Archeological Preservation Act,
    Pub. L. No. 93-291, 88 Stat. 174 (1974) ...........................................13

Violence Against Women and Department of Justice Reauthorization Act of 2005,
Pub. L. No. 109-162, 119 Stat. 2960 (2006) .................................................................4

Water Resources Reform and Development Act of 2014,
Pub. L. No. 113-121, 128 Stat. 1193 ............................................................................12

1 U.S.C. § 1 ..................................................................................................................5

8 U.S.C. § 1231(a)(1)(B)(iii) ........................................................................................1

8 U.S.C. § 1231(a)(4)(A) ..............................................................................................1

8 U.S.C. § 1373 ......................................................................................................2, 11

8 U.S.C. § 1373(c) ......................................................................................................18

26 U.S.C. § 5812 ........................................................................................................14

26 U.S.C. § 5841 ........................................................................................................14

34 U.S.C. § 10102(a)(6) ........................................................................................2, 4, 5

34 U.S.C. § 10152(a)(1) ................................................................................................7

34 U.S.C. § 10152(d) ....................................................................................................8

34 U.S.C. § 10153(A)(4) ................................................................................................7

34 U.S.C. § 10153(A)(5) ..............................................................................................23

34 U.S.C. § 10153(A)(5)(C) ..........................................................................................7

34 U.S.C. § 10153(A)(5)(D) ..............................................................................2, 11, 14

34 U.S.C. § 10156 ........................................................................................................9

34 U.S.C. § 10202(c)(1)(B) ..........................................................................................8

34 U.S.C. § 10202(c)(1)(C) ..........................................................................................8

34 U.S.C. § 10228(a) ..................................................................................................24

34 U.S.C. § 20927(a)................................................................9

34 U.S.C. § 30307(e)(2)(A)........................................................9

34 U.S.C. § 40914(b)(1)(B)........................................................8

34 U.S.C. § 60105(c)................................................................8

42 U.S.C. § 3712(a)(6) (2000)..............................................3, 4

42 U.S.C. § 16154(g)(1)...........................................................11

**Regulations:**

28 C.F.R. § 66.12 (2014)...........................................................6

**Legislative Materials:**

H.R. 3009, 114th Cong. (2015)................................................10

H.R. 5654, 114th Cong. (2016)................................................10

H.R. Rep. No. 109-233 (2005)..............................................4, 6

S. 3100, 114th Cong. (2016)....................................................10

v

## INTRODUCTION AND SUMMARY

Plaintiffs challenge conditions on federal law enforcement grants that require a basic level of cooperation between local and federal law enforcement officials with respect to persons regulated by both the states and the federal government. To accommodate local criminal justice interests, Congress has provided that the Department of Homeland Security (DHS) generally cannot remove aliens in local criminal custody until they are released. *See* 8 U.S.C. § 1231(a)(4)(A). The predicate assumption of that accommodation is that states would not use the accommodation for state and local law enforcement to frustrate federal law enforcement. Indeed, Congress made that assumption explicit in requiring DHS to detain and remove aliens promptly after their release from local criminal custody. *Id.* § 1231(a)(1)(B)(iii). The conditions challenged here reasonably further the operation of the careful balance established by Congress.

Plaintiffs make no showing to the contrary. Their briefs barely acknowledge the manner in which Congress has accommodated state law enforcement interests, and they do not explain how they could properly use the opportunity afforded by federal law to impair the operation of the national government's regulation of immigration. Indeed, the City of New York does not dispute that its policies obstruct the enforcement of federal immigration law by prohibiting the sharing of information that is important to determining when DHS may detain and remove aliens. And plaintiffs do not explain why the federal government cannot condition law

enforcement grants on the basic level of cooperation necessary to avoid undermining federal law enforcement.

Plaintiffs' contention that the notice and access conditions fall outside the authority vested in the Department would render the relevant portion of the statute a nullity. The statute empowers the Assistant Attorney General for the Office of Justice Programs (OJP) to, among other things, "plac[e] special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). Plaintiffs assert, however, that this provision confers no authority other than that already vested by other statutory provisions. This argument would transform a grant of authority into meaningless surplusage. Plaintiffs' argument also cannot be reconciled with the Department's longstanding practice—never previously questioned—of imposing numerous and wide-ranging conditions on Byrne JAG awards, such as mandatory wear requirements for body armor. *See* App. 168 (¶ 39).

Plaintiffs' challenge to the § 1373 certification condition is similarly without merit. Congress authorized the condition when it provided that Byrne JAG applicants must certify that they "will comply with all provisions of [the Byrne JAG Program] and all other applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D). Plaintiffs contend that "applicable Federal laws" are limited to laws specific to federal grantees. That exercise in statutory interpretation is similarly without a textual basis.

The City goes further and urges that even if 8 U.S.C. § 1373 is an applicable law within the meaning of the statute, it is not an "applicable Federal law[]" on the ground

that § 1373 would violate the Tenth Amendment if enforced as a stand-alone statute. This reasoning fails at every turn. As a statutory matter, § 1373 is a "Federal law" that is "applicable" as a funding condition regardless of whether it could also constitutionally be applied as a stand-alone regulation. And as a constitutional matter, the City is wrong because § 1373, even as a standalone regulation, does not commandeer states and localities to regulate or to enforce a federal regulatory scheme. Rather, it preempts state and local information-sharing restrictions that obstruct the federal government's enforcement of the immigration laws against individual aliens. At a minimum, it is valid as an information-sharing requirement that falls outside the anti-commandeering doctrine.

Plaintiffs' suggestion that the conditions violate the separation of powers is insubstantial. And their contention that the conditions are arbitrary and capricious adds nothing to their (mistaken) argument that the conditions are outside the Department's statutory authority.

## ARGUMENT

## I.    The Notice And Access Conditions Are Authorized By Statute

In 2006, when Congress created the Byrne JAG program, the Assistant Attorney General for OJP (AAG) already possessed the authority to "exercise such other powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General." 42 U.S.C. § 3712(a)(6) (2000). In the same statute that created the Byrne JAG program, Congress amended this language, for the

first time conferring power on the AAG to "plac[e] special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6); *see* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, §§ 1111, 1152(b), 119 Stat. 2960, 3094, 3113 (2006). And to remove any doubt about the new nature of this power, the legislative history of the Byrne JAG program confirms that the language added in 2006 "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

Plaintiffs contend that Congress added this language to no purpose at all. They insist that the "special conditions" and "priority purposes" language provides no new authority, but merely "clarifies that placing special conditions is one of the powers that may be 'vested' in the AAG or 'delegated' by the Attorney General," City Br. 28; *accord* States Br. 24, and that the term "including" demonstrates that the language is purely "illustrative," City Br. 24-26. No one doubts that statutory language can "perform[] a significant function simply by clarifying" the meaning of statutory text, *United States v. Atlantic Research Corp.*, 551 U.S. 128, 137 (2007), but it performs that function where there is some ambiguity that requires clarification in the first place. When the relevant language was added in 2006, the AAG already possessed authority to exercise powers already granted to him by statute or delegated by the Attorney General. *See* 42 U.S.C. § 3712(a)(6) (2000). Plaintiffs surely cannot suggest that

4

Congress needed a statutory amendment to "clarify" or "illustrate" that the AAG possessed authority that Congress had already expressly conferred on him.

Indeed, neither plaintiffs nor the district court have identified any such power vested in the AAG elsewhere or delegated by the Attorney General to which this language could plausibly apply. Only the City even attempts to grapple with this problem, and does so in a way that confirms the error of its reading. The City urges that it does not matter whether the provision is wholly meaningless because it refers only to "powers and functions as *may be* vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General." 34 U.S.C. § 10102(a)(6) (emphasis added); *see* City Br. 29. In other words, the apparent grant of authority is merely authorization to wield authority that does not exist, but might exist someday in the future.

Plainly, the term "including" as used in this statute means "and" or "in addition to." *See, e.g., American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933) (observing that the term "include" is often used as "a word of extension or enlargement"). Indeed, the Dictionary Act uses the term in precisely this fashion, repeatedly using the word "include" to expand the meaning of the preceding language. *See* 1 U.S.C. § 1 (explaining, for example, that "words importing the masculine gender include the feminine as well"). Whatever the limits of the Department's previous authority, the amendment undoubtedly established that the AAG has the power to impose "special conditions" and determine "priority purposes" for grants. If that were not the case, there would have been no reason to enact the amendment. Thus, even if the

5

"including" clause were read to refer only to authority that was conferred on the AAG in Chapter 101 of Title 34, the "including" clause *itself*, as the legislative history confirms, "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101.

Plaintiffs attempt to give some content to their interpretation of § 10102(a)(6) by asserting that "special conditions" should be read to refer to a particular type of special condition imposed on "high-risk" grantees under a general Department regulation, 28 C.F.R. § 66.12 (2014), that was in effect between 1988 and 2014. City Br. 28-29; States Br. 25-29. Plaintiffs do not explain why Congress would need to provide additional statutory authority for a regulation that existed, apparently unchallenged, under the authority that predated the 2006 amendment. On the other hand, Congress would have reason to make explicit the AAG's authority to impose special conditions as deemed appropriate. Moreover, even on its own terms, the cited regulation did not purport to define the universe of "special conditions" applicable to all types of grantees. Rather, the regulation merely described one type of special condition that was applicable to one type of grantee: "Special grant or subgrant conditions for 'high-risk' grantees." 28 C.F.R. § 66.12 (2014). Plaintiffs do not explain why the only type of special conditions authorized under § 10102(a)(6) would be those applicable to high-risk grantees; the statute, unlike the regulation, does not mention high-risk grantees.

6

Plaintiffs also misunderstand the purpose of other requirements of the Byrne JAG program which permit the Attorney General to "reasonably require" "programmatic" information about the funded program, 34 U.S.C. § 10153(A)(4), and to ensure that "there has been appropriate coordination with affected agencies," *id.* § 10153(A)(5)(C). Nothing in the text of those provisions limits the "programmatic" information that may be sought to "'information regarding the handling of federal funds.'" City Br. 38-39 (quoting *City of Philadelphia v. Attorney Gen.*, 916 F.3d 276, 285 (3d Cir. 2019)). The better reading is that the "programmatic" information references those programs listed in 34 U.S.C. § 10152(a)(1), including "[l]aw enforcement programs" and "corrections programs."

Plaintiffs fare no better in pointing to the "past tense" of the "coordination" referred to in § 10153(a)(5)(C). City Br. 38 (quoting *City of Philadelphia*, 916 F.3d at 285). Under plaintiffs' reading, the Department would have no ability to enforce a grant condition even if the recipient made clear that it intended to end any coordination immediately after the grant was awarded. In any event, the notice and access conditions are consistent with Congress's chosen verb tense because they focus on the existence of a policy of cooperation at the time of the proposal.

Plaintiffs are also wrong to suggest (City Br. 29-30; States Br. 29-30) that all of the other special conditions applied to Byrne JAG grants, such as information technology requirements, App. 166 (¶¶ 26-27); protections for human research subjects, *id.* ¶ 29; restrictions on the purchase of certain military-style equipment, App.

7

168-69 (¶¶ 45-50); requirements regarding body armor purchases, App. 168 (¶¶ 38-39); and training requirements, App. 166 (¶¶ 32-33), are authorized by other statutory and regulatory provisions.  For example, the conditions restricting the purchase of certain military-style equipment, App. 168-69 (¶¶ 45-50), go beyond the restrictions on "vehicles" and "luxury items" contained in 34 U.S.C. § 10152(d).  Similarly, the codification of certain conditions relating to body armor in 2016, *see* 34 U.S.C. § 10202(c)(1)(B), (C), occurred *only after* the AAG imposed them as special conditions in 2012.  And the AAG has imposed an "American-made" requirement for body-armor purchases, which Congress has not chosen to codify.  App. 168 (¶ 38). Plaintiffs cannot account for the AAG's past adoption of these special conditions advancing particular federal law enforcement interests, none of which has ever been questioned by Congress or challenged as *ultra vires* by a grant recipient, including plaintiffs.

Plaintiffs erroneously contend that the Department's interpretation of § 10102(a)(6) would render meaningless statutory provisions in which Congress set out limited penalties of specific percentages of Byrne JAG funds that may be withheld for non-compliance with certain other requirements.  City Br. 21-22; States Br. 20-21; *see, e.g.*, 34 U.S.C. § 40914(b)(1)(B) ("Attorney General may withhold not more than 4 percent" of Byrne JAG funds for failure to provide information relevant to National Instant Criminal Background Check System); *id.* § 60105(c) ("not more than a 10-percent reduction" for failure to provide information regarding deaths of persons in

state custody); *id.* § 20927(a) (ten percent of Byrne JAG funds for jurisdictions that do not implement the Sex Offender Registration and Notification Act requirements); *id.* § 30307(e)(2)(A) (five percent of funds received for prison purposes for States that have not adopted and complied with national standards regarding prison rape). It is not superfluous for Congress to set particular penalties that the Attorney General may impose for non-compliance with specific provisions, and also to authorize the AAG to impose additional conditions that States and localities must agree to in accepting federal funds.

More broadly, plaintiffs demonstrate their fundamental misunderstanding of the statutory scheme by focusing on the formula for the Byrne JAG grant. City Br. 20; States Br. 18-21. The Department has never claimed authority to deviate from the statutory formula established by Congress for determining the size of a particular jurisdiction's award, *see* 34 U.S.C. § 10156, and thus would not, absent specific statutory authorization, have authority to partially reduce grant awards in the manner prescribed by the statutes discussed above. That a grantee's allocation is determined by the statutory formula does not excuse a grantee from the requirements of the grant, nor does it permit a grantee to demand its share free from special conditions Congress authorized the Department to impose on "all grants" in the statute that created the Byrne JAG program. And plaintiffs are likewise wrong in characterizing the notice and access conditions as "eligibility criteria." *See, e.g.*, States Br. 2. Any state or locality that satisfactorily completes the Byrne JAG application is eligible to

9

receive an award. That a jurisdiction may choose not to accept an award offered by the Department because it does not wish to comply with conditions imposed on the grant does not alter the jurisdiction's eligibility for the funds, as plaintiffs elsewhere recognize. *See* States Br. 10 (observing that the States were informed "that they were eligible to receive their FY 2017 Byrne JAG allocations" before bringing suit).

Finally, plaintiffs mistakenly attempt to rely on various failed legislative proposals as evidence that Congress's 2006 amendment conferred no substantive power on the AAG. City Br. 23 & n.6; States Br. 22-23, 22 n.8. Such failed legislative history is not a reliable tool of statutory interpretation. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990). And all of the failed legislative proposals plaintiffs trumpet are inapposite on their own terms. Some did not propose to amend the Byrne JAG program at all, *see, e.g.*, H.R. 5654, 114th Cong., § 4 (2016) (addressing funds from Economic Development Administration Grants and Community Development Block Grants under Title 42); S. 3100, 114th Cong., § 4 (2016) (same), and the remainder would have required the Department to withhold Byrne JAG funds from jurisdictions that did not provide specified forms of immigration cooperation, *see, e.g.*, H.R. 3009, 114th Cong., § 3(b) (2015). Plaintiffs' argument thus illustrates the aptness of the Supreme Court's warning that "'several equally tenable inferences' may be drawn from [congressional] inaction, 'including the inference that the existing legislation already incorporated the offered change.'" *LTV Corp.*, 496 U.S. at 650 (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)).

10

## II.    The § 1373 Certification Condition For FY 2017 Is Valid And Raises No Tenth Amendment Concerns

### A.    The § 1373 Certification Condition Is Statutorily Authorized

Byrne JAG applicants must certify that they "will comply with all provisions of [the Byrne JAG Program] and all other applicable Federal laws."  34 U.S.C. § 10153(A)(5)(D).  In 2016, the Department of Justice determined that 8 U.S.C. § 1373 is an "applicable Federal law" for these purposes, *see* App. 150-51, and asked some jurisdictions, including New York City, to review their compliance with § 1373, App. 170 (¶ 53).  Plaintiffs do not dispute that neither New York City nor any other jurisdiction challenged the FY 2016 condition.  Beginning in FY 2017, OJP extended the requirement, requiring all jurisdictions to explicitly certify that any "program or activity" funded in whole or in part by the grant complies with § 1373.  *See* App. 224, 266.

Plaintiffs contend that this language reaches "only those statutes that apply to the grant and grantmaking."  States Br. 35; *accord* City Br. 31.  The text of the statute is not so limited, referring instead to "*all other* applicable Federal laws."  34 U.S.C. § 10153(A)(5)(D) (emphasis added); *see City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 944 (N.D. Ill. 2017).  Congress is perfectly capable of writing a statute that refers specifically to laws applicable to federal grantees when it intends to do so.  *See, e.g.*, 42 U.S.C. § 16154(g)(1) ("consistent with the generally applicable Federal laws and regulations governing awards of financial assistance, contracts, or other agreements");

11

Water Resources Reform and Development Act of 2014, Pub. L. No. 113-121, §

1043(a)(3)(C)(ii)(II), 128 Stat. 1193, 1246 ("will comply with all applicable Federal laws

(including regulations) relating to the use of those funds").

Only the City even attempts to grapple with these examples (City Br. 37-38),

and it urges only that these examples do not precisely mirror the requirement at issue

here. But the substance of those provisions is beside the point; the statutes illustrate

that Congress knows how to single out laws "applicable" to "awards of financial

assistance, contracts, or other agreements" when that is all it intends to capture, and it

did not use such confined language here.

Plaintiffs do not advance their argument by contending that the Byrne JAG

program was intended to give state and local governments flexibility to spend grant

funds, and that requiring compliance with § 1373 (or other statutes) "would

destabilize the formula nature of the grant." States Br. 34 (quoting *City of Philadelphia*,

916 F.3d at 290); *accord* City Br. 32. There is nothing "destabiliz[ing]" about requiring

applicants to certify their compliance with federal law—provisions with which they

should already be complying—particularly where that certification does not deprive

them of any flexibility over how to spend their grant funds. Nor does

§ 10153(A)(5)(D) require compliance with "any and all federal statutes of DOJ's

choosing." States Br. 34. Congress, not the Attorney General, has made laws

applicable to plaintiffs.

12

For similar reasons, plaintiffs err in arguing (City Br. 34-35; States Br. 35) that the government's reading renders the term "applicable" superfluous. The Department has never contended that the applicable laws certification sweeps in "every law that could conceivably apply to States and localities." States Br. 35. Rather, as our opening brief explains (U.S. Br. 26), "applicable" laws are those that are germane to the Byrne JAG program and can thus be constitutionally applied as grant conditions to the program or activity at issue.

Plaintiffs engage in interpretive acrobatics in seeking to rely on Department documents predating the passage of the Justice System Improvement Act of 1979 (City Br. 33-34; States Br. 37-39). Although the value of those materials in understanding the 1979 statute is dubious in its own right, plaintiffs appear to contend that in enacting the Byrne JAG statute twenty-seven years later, Congress believed that applicable statutes within the meaning of that program would include enactments like the Historical and Archeological Preservation Act, Pub. L. No. 93-291, 88 Stat. 174 (1974), and the Coastal Zone Management Act of 1972, Pub. L. No. 92-583, 86 Stat. 1280. *See* Dkt. No. 58-31, at 23. They would not, however, include statutes that speak directly to the relationship between state and local governments and federal law enforcement. On plaintiffs' theory, for example, the Department of Justice would be powerless to reject the Byrne JAG application of a state or locality that refused to properly register the transfer of regulated firearms under federal law, because those statutes do not single out states and localities in their capacities as federal grantees.

13

*See* 26 U.S.C. §§ 5812, 5841 (describing registration and transfer requirements for all weapons "not in the possession or under the control of the United States").

Finally, the City is simply wrong to assert (City Br. 36-37) that it is not on notice of the § 1373 certification requirement. The City does not contest that Congress has conditioned Byrne JAG funds on a grantee's certification of compliance with "all other applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D). Congress need not enumerate each and every "applicable Federal law[]" to "express clearly its intent to impose conditions on the grant of federal funds." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 24 (1981). Rather, the Supreme Court has rejected clear notice claims "where [a] statute made clear that there were some conditions placed on receipt of federal funds," because "Congress need not 'specifically identif[y] and proscrib[e]' each condition in the legislation." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (second and third alterations in original) (quoting *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 665-66 (1985)). An agency may always provide additional specificity about the general obligations Congress imposes. Indeed, to the extent that the City was in any doubt about whether § 1373 qualified as an "applicable Federal law[]," that doubt was removed in 2016, when OJP specifically identified it as such and included a condition in the City's grant addressing the City's compliance with the statute. App. 150-51; 170 (¶ 53). And given the nature of the § 1373 certification for the FY 2017 grant, the City does not and cannot suggest that it lacked sufficient information to "make an informed choice" about whether to accept Byrne

14

JAG funds or was in any way "surpris[ed]" by "post acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25.

###### B.   The § 1373 Certification Condition Is Constitutional as a Funding Condition, and § 1373 Raises No Tenth Amendment Concerns Even as a Standalone Statute

**1.**  As explained in our opening brief (U.S. Br. 28-30), having concluded that § 1373 was not an applicable statute, the district court had no basis for addressing the constitutionality of § 1373 as a standalone statute, disregarding its "duty to avoid passing on constitutional questions whenever possible." *United States v. Rybicki*, 354 F.3d 124, 144 (2d Cir. 2003) (en banc).

In any event, the constitutionality of § 1373 as a standalone statute has no bearing on whether it can be constitutionally applied as a spending condition. The Supreme Court has long emphasized that "a perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants." *South Dakota v. Dole*, 483 U.S. 203, 210 (1987). This appeal concerns an injunction prohibiting the application of § 1373 as a condition on federal funds. *See* App. 87-88 (States complaint); App. 125-26 (City complaint). And as the States concede, "*Congress* may use its Spending Power to impose a wider range of conditions on federal grants than the Tenth Amendment permits to be imposed on States directly." States Br. 45. Because neither the States nor the City have contested that Congress could require compliance with § 1373 as a condition on federal funds under the Spending Clause, the only issue is the statutory

15

question whether "*Congress* . . . authorized DOJ to impose § 1373 as a condition of Byrne JAG eligibility under § 10153(a)(5)(D) in the first place." States Br. 45.

Only the City even attempts to justify asking this Court to reach the constitutionality of § 1373 as a facial matter, and then only in a footnote. City Br. 43 n.14. The City does not even reference *Dole*, nor does it explain how application of § 1373 as a funding condition implicates the Tenth Amendment despite *Dole*'s clear statement to the contrary. *Dole*, 483 U.S. at 210.

The City's failure to engage with *Dole* is reflected in both the arguments it advances in support of a facial challenge to § 1373. First, the City contends that the statute's "unconstitutionality itself is one reason that it doesn't qualify as an applicable law." City Br. 43 n.14. The City ignores the unassailable textual point that § 1373 is a "federal law" that can be "applicable" as a funding condition. *See* U.S. Br. 28-29. The statutory question is whether Congress intended to make Byrne JAG applicants certify compliance with § 1373 as an "applicable Federal law[]." Because the answer to that question is yes, *see supra* pp. 11-14, Congress has permissibly applied § 1373 as a funding condition on Byrne JAG applicants, and a Tenth Amendment challenge is foreclosed in these circumstances. *See Dole*, 483 U.S. at 210.

Second, the City contends that this Court should address the constitutionality of § 1373 as a general matter because it sought a declaratory judgment, and that such a remedy is available here because of "the DOJ's authoritative—albeit incorrect—interpretation and efforts to enforce it." City Br. 43 n.14; *see* App. 131-32. But the

16

only statute the Department has "interpret[ed]" and "enforce[d]" in imposing the certification requirement is § 10153(A)(5)(D). If the Department is correct that Congress has conditioned Byrne JAG funds on a recipient's compliance with § 1373, that is the end of the matter. Section 1373 lacks any enforcement mechanism of its own, so the only way in which the City could possibly say that § 1373 is being "enforce[d]" against it is as a funding condition subject to analysis under *Dole*.

The City is also wrong to ask this Court to "declare" § 1373 unconstitutional. City Br. 43. This interlocutory appeal arises from the district court's entry of an injunction against the Department of Justice. Deciding the constitutionality of § 1373 where it is unnecessary to determine the appropriateness of that injunction would be fundamentally inconsistent with basic principles of constitutional avoidance. *See Rybicki*, 354 F.3d at 144. Moreover, the only application of § 1373 at issue is the enjoined condition; the City has not alleged any credible threat of enforcement of § 1373 as anything other than a funding condition. *See American Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) ("A plaintiff must demonstrate 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement'" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). And if these were not sufficient reasons to decline the City's invitation, prudential considerations strongly suggest that a panel of this Court should not

17

unnecessarily consider whether to overrule circuit precedent. *See City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999).[1]

**2.** Regardless, plaintiffs' attacks on § 1373 as a standalone statute fundamentally misunderstand the Supreme Court's Tenth Amendment jurisprudence. Section 1373 does not, as plaintiffs contend (City Br. 45-47; States Br. 41-45) regulate states and localities in violation of *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018). The statute provides for a free flow of information between federal, state, and local governments with regard to persons regulated at each level. Section 1373 requires the federal government to respond "to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law." 8 U.S.C. § 1373(c). And, as relevant here, it does no more than preempt state and local governments from using the exercise of their own regulatory authority to frustrate the federal government's regulation of persons in their custody. U.S. Br. 30-32. Indeed, the City does not dispute that its policies obstruct the enforcement of federal immigration law against private parties by

---

[1] Indeed, although the district court granted summary judgment on the City's count seeking a declaratory judgment, *see* App. 42, it has not yet entered final judgment, and gave no explanation that would support the entry of a wholly gratuitous declaratory judgment.

prohibiting the sharing of information that is important to determining when DHS may detain and remove aliens.

Plaintiffs erroneously contend that § 1373 is not a preemption provision because it "regulates state and local government actors, not private citizens." States Br. 45; *see* City Br. 45. Of course, express preemption provisions are always directed at governmental entities and not private persons. The City urges that that federal law can preempt only "inconsistent state or local regulations of . . . private parties," City Br. 47; States Br. 44, but that is precisely how § 1373 operates in this case. Plaintiffs do not contest that Congress could have required federal immigration authorities to take into custody and remove aliens without permitting states and localities to enforce local criminal law against them in the first instance. *See* U.S. Br. 33-34; *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (noting Congress's "plenary power over immigration" and explaining "that the federal government may exercise its plenary powers even though the effects of such exercises of power may be onerous to the states"). Congress, however, chose to preserve a role for state and local criminal justice systems, and enacted § 1373 in recognition of these overlapping schemes for regulating the same aliens, ensuring that the federal government would respond to state inquiries and that the state would not use its authority to hinder federal immigration enforcement. Placing conditions on a state or locality's exercise of its own regulatory authority in no respect commandeers that subordinate sovereign. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290-91 (1981) ("We

19

fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role.").

Plaintiffs cannot abstract § 1373 from its important role in the context of the Immigration and Nationality Act. And *Murphy* did not create a novel limitation that bars preemption of direct state interference with federal law. The "controlling principle" is that "*any* state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." *Perez v. Campbell*, 402 U.S. 637, 652 (1971) (emphasis added); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 322 (1819); *City of New York*, 179 F.3d at 35 (observing that "the Supremacy Clause . . . bars states from taking actions that frustrate federal laws and regulatory schemes").

The City reiterates its claim that § 1373 denies localities the "critical alternative" of "declining to assist a federal program." City Br. 49. The statute is not asking the state to provide "assistance." The City has chosen to take advantage of the opportunity afforded by Congress to exercise its regulatory authority by enforcing state and local laws before the federal government enforces the immigration laws. Having done so, it cannot frustrate the federal government's regulation of the same individuals by refusing to respond to questions about their release dates. The City's analogy to *Printz v. United States*, 521 U.S. 898 (1997), highlights its error. City Br. 48. The statute in *Printz* required state and local officials to carry out background checks at the federal government's behest. Section 1373 does not compel state or local officials to participate in immigration enforcement. It merely preempts state and local

20

governments from using local criminal justice authorities to obstruct the federal government's enforcement of the immigration laws.

The City further underscores its misunderstanding of preemption principles by complaining that § 1373 undermines political accountability because it "overrid[es] the City's implementation of the will of its electorate." City Br. 51. The very definition of preemption is that a state or locality may not enact or enforce laws that are preempted by federal law, regardless of "the will of its electorate." The City's assertion that § 1373 hinders its ability to impose its preferred policies on its officials (City Br. 49) is of a piece: federal preemption of state or local law commonly renders state and local officials unable to take certain actions they would otherwise take, and the point only highlights why § 1373 is properly understood as a preemption provision.

At a minimum, § 1373 is valid as an information-sharing requirement that falls outside the scope of the anti-commandeering doctrine. A requirement to respond to, or not interfere with, a federal inquiry about an alien's release date is not "commandeering" local officials to execute federal law. *See* U.S. Br. 36-37. The City's contention that the Supreme Court has never adopted an information-sharing exception, City Br. 52-53, gets matters backwards: the Supreme Court has never extended the anti-commandeering doctrine so far as to invalidate information-sharing requirements. This Court should not do so here. Furthermore, the majority in *Printz* explicitly distinguished statutes that "require only the provision of information to the Federal Government," reasoning that they "do not involve . . . the forced

21

participation of the States' executive in the actual administration of a federal

program." 521 U.S. at 918. The same is true of § 1373.

## III. There Is No Other Basis For Setting Aside The Conditions

**A.** Plaintiffs provide no support for the district court's judgment that the

conditions violate the separation of powers. Plaintiffs' suits contest whether the

Department had statutory authority to impose the conditions. As the Supreme Court

has made clear, a negative answer to that statutory question does not mean that an

executive agency has acted "*ipso facto* in violation of the Constitution." *Dalton v.

Specter*, 511 U.S. 462, 472 (1994). Plaintiffs insist that this case is different because it

asks whether the Department "has usurped the power of the purse." City Br. 19 n.5;

States Br. 55. But every challenge that alleges that an agency has acted outside its

statutory authority would be equally subject to characterization as a claim that an

agency has overstepped its constitutionally prescribed role. That bootstrapping of a

statutory claim into a freestanding separation of powers claim is precisely what *Dalton*

rejects.

**B.** There is likewise no basis for a challenge under the Administrative

Procedure Act to the requirement that jurisdictions certify their compliance with

§ 1373. As explained in our opening brief, U.S. Br. 38, the question is simply whether

Congress has made § 1373 an "applicable Federal law[]" with which plaintiffs must

certify compliance. In answering that legal question, plaintiffs' suggestion that the

§ 1373 certification was an unexplained departure from past practice (City Br. 41;

States Br. 53), is irrelevant. Plaintiffs ignore the fact that the Department first

determined that § 1373 was an "applicable Federal law[]" in 2016, and included a

requirement that the City review its compliance with § 1373 in the City's FY 2016

Byrne JAG award without objection from the City. *See* App. 150-51; 170 (¶ 53). The

only novelty in the FY 2017 grant is that the Department called particular attention to

grantees' compliance (or noncompliance) with the statute through the certification—

an action doubtless within the Department's authority to require a certification "made

in a form acceptable to the Attorney General." 34 U.S.C. § 10153(A)(5).

Plaintiffs also contend that the notice and access conditions are arbitrary and

capricious, chiefly arguing that the Department did not make an adequate factual

determination about the conditions' effect on crime. City Br. 40-41; States Br. 53-54.

But it is sufficient under the APA's requirements for reasoned decisionmaking that

the Department acted to discourage a particular practice that has a deleterious effect

on the federal government's efforts to enforce the laws and poses risks to officer

safety and the community—an effect that plaintiffs do not dispute. In particular, the

City's actions impair federal immigration enforcement and force the federal

government to attempt to take custody of aliens in the community—at risk to the

officers involved and to public safety—rather than taking custody through an orderly

process that does not subject the community to intrusion and potential harm. It is

inherently rational to structure the Byrne JAG program in a way that permits the

23

federal government to carry out its responsibilities under the INA in a safe and orderly manner.

Nor was imposition of these conditions subject to any heightened burden of explanation. *See* City Br. 41; States Br. 51-53. The letter plaintiffs cite does not discuss whether § 10102(a)(6) provides authority to impose the conditions at issue here, but merely addresses at a general level the Department's ability to condition grants on local jurisdictions continuing to detain criminal aliens. *See* Dkt. No. 58-9, at AR-00112 to AR-00113. In any event, whether the Department has the statutory authority to impose "special conditions on all grants" is a straightforward question of statutory construction, not a matter of factual or evidentiary support.

**C.** Nor do plaintiffs advance their argument by citing 34 U.S.C. § 10228(a), City Br. 35-36; States Br. 46-49, which states that the Department may not, through its grants, "exercise any direction, supervision, or control over any police force . . . of any State or political subdivision thereof." *Id.* As the Fourth Circuit has explained, "[t]he dominant concern of Congress apparently was to guard against any tendency towards federalization of local police and law enforcement agencies," avoiding "the establishment of a federal police force" by allowing federal authorities to control the "routine operations of local police forces," such as by "prescribing the type of shoes and uniforms to be worn" or "the type or brand of ammunition to be purchased." *Ely v. Velde*, 451 F.2d 1130, 1136-37 (4th Cir. 1971) (quotation marks and alteration omitted). Ensuring that state and local governments do not undermine federal law

24

enforcement as a condition of the receipt of federal funds does not remotely implicate these concerns, especially given that Congress has already required plaintiffs to comply with § 1373.  Indeed, plaintiffs' arguments on this score prove far too much, in that they would appear to call into question any funding condition imposed by the Department on a State or local law enforcement entity, including those that have been imposed, unchallenged, for many years.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

MARK B. STERN
DANIEL TENNY

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*
*bradley.a.hinshelwood@usdoj.gov*

May 2019

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,311 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Brad Hinshelwood*
Brad Hinshelwood