# Nos. 19-267 (L), 19-275 (con.)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

STATE OF NEW YORK, STATE OF CONNECTICUT, STATE OF NEW JERSEY, STATE OF WASHINGTON, COMMONWEALTH OF MASSACHUSETTS, COMMONWEALTH OF VIRGINIA, STATE OF RHODE ISLAND, CITY OF NEW YORK,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM P. BARR, in his official capacity as Attorney General of the United States,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of New York

**SUPPLEMENTAL BRIEF FOR APPELLANTS UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM P. BARR**

JOSEPH H. HUNT
  *Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.      These Appeals Remain Justiciable ............................................................... 2

    II.     34 U.S.C. § 10153(A)(4) Authorizes The Notice Condition ............................. 6

CONCLUSION ........................................................................................................... 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................................ 7-8

*California ex rel. Becerra v. Sessions*,
   2018 WL 6069940 (N.D. Cal. Nov. 20, 2018) ............................................ 4

*City of Los Angeles v. Barr*, __ F.3d __,
   2019 WL 3049129 (9th Cir. July 12, 2019) ..................................... 5, 7, 8

*Demore v. Kim*,
   538 U.S. 510 (2003) ..................................................................................... 8

*Ellis v. Railway Clerks*,
   466 U.S. 435 (1984) ..................................................................................... 4

*Kingdomware Techs., Inc. v. United States*,
   136 S. Ct. 1969 (2016) ................................................................................. 5

*Knox v. Service Emps. Int'l Union, Local 1000*,
   567 U.S. 298 (2012) ..................................................................................... 4

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ......................................................................................... 8

**Statutes:**

8 U.S.C. § 1231(a)(1)(B)(iii) ............................................................................ 6

8 U.S.C. § 1231(a)(2) ....................................................................................... 6

8 U.S.C. § 1231(a)(4)(A) ................................................................................. 6

8 U.S.C. § 1373 ................................................................................................ 8

34 U.S.C. § 10102(a)(6) ................................................................................... 6

34 U.S.C. § 10152(a)(1)(A) ............................................................................. 6

34 U.S.C. § 10152(a)(1)(D) ............................................................................. 6

34 U.S.C. § 10152(f) ...................................................................................................3

34 U.S.C. § 10153(A)(4) ......................................................................................... 1, 6

34 U.S.C. § 10153(A)(5)(C) .......................................................................................7

34 U.S.C. § 10153(A)(5)(D) .......................................................................................8

34 U.S.C. § 10158(b)(1) .............................................................................................3

34 U.S.C. § 10251(a)(1) .............................................................................................6

**Other Authorities:**

Office of Justice Programs, U.S. Dep't of Justice:

*Important Updates,* https://www.bja.gov/jag ....................................................2

*OJP Award Data*, https://ojp.gov/funding/Explore/
   OJPAwardData.htm ........................................................................................2

## INTRODUCTION AND SUMMARY

The government respectfully submits this supplemental brief in response to the Court's order of July 10, 2019.

1. This appeal remains justiciable because, although all plaintiffs here have had their FY 2017 Byrne JAG awards processed, they have not yet expended all of the funds and need not do so until the fall of 2020. The district court deliberately crafted its order to ensure that, if the government were to prevail on appeal, future expenditures of FY 2017 Byrne JAG funds would be subject to the challenged conditions. In particular, those conditions remain in the grant documents; their enforcement has merely been enjoined. If this Court vacates the injunction, plaintiffs will be required to agree to the conditions if they wish to continue to spend FY 2017 Byrne JAG funds. These appeals thus continue to present live controversies.

2. The requirement that each Byrne JAG applicant provide "[a]n assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require," 34 U.S.C. § 10153(A)(4), provides authorization for the "notice" condition. Notice of an alien's release from local criminal custody constitutes information about the law-enforcement and corrections programs funded by the grants. The Department may "reasonably require" jurisdictions to provide this basic information given its importance to the

enforcement of federal law against aliens that grant recipients have taken into custody for their own criminal justice purposes.

## ARGUMENT

### I. These Appeals Remain Justiciable

Although plaintiffs already have access to their grant funds, there is still a live controversy because the FY 2017 Byrne JAG funds have not been fully expended. The parties continue to dispute whether future expenditures of those funds should be subject to the conditions at issue in these consolidated appeals.

As the Court's order observes, FY 2017 Byrne JAG awards have been processed for virtually all jurisdictions. All of the plaintiffs in these consolidated appeals have accepted their FY 2017 Byrne JAG awards and thus can begin (or have already begun) drawing down and expending grant funds. The States accepted their FY 2017 awards following the district court's grant of a writ of mandamus in this case. *See* Gov't Br. 15; App. 39. In addition, the City of New York accepted its award and began expending its FY 2017 funds after the issuance of an injunction on behalf of members of the U.S. Conference of Mayors in *City of Evanston v. Barr*, No. 18-cv-4853 (N.D. Ill.), *appeal docketed*, No. 18-3178 (7th Cir.). *See generally Important Updates*, Office of Justice Programs, https://www.bja.gov/jag.[1] Because the City's application

---

[1] The current status of the grant award of any jurisdiction can be accessed through the website of the Office of Justice Programs. *See* Office of Justice Programs, *OJP Award Data*, https://ojp.gov/funding/Explore/OJPAwardData.htm.

for a FY 2017 Byrne JAG award had already been approved by the time the district court entered its injunction here, the City dropped its request for mandamus relief against the Department. *See* Gov't Br. 15 n.5; App. 8 n.6, 36 n.26; *City of New York v. Barr*, No. 18-cv-6474, Dkt. No. 65 (letter from the City notifying the district court of the issuance of its award documents).

Although plaintiffs have access to their funds, they have not yet expended all the funds. Byrne JAG awards are made for four-year periods. *See* 34 U.S.C. § 10152(f); App. 197 (noting that the Department "make[s] awards for a four-year period of performance"); App. 239 (same). Jurisdictions therefore have until September 30, 2020 to expend their FY 2017 Byrne JAG funds. *See* App. 274 (New York State FY 2017 award document, noting that the "Project Period" extends from October 1, 2016 to September 30, 2020); 34 U.S.C. § 10158(b)(1) (requiring that jurisdictions "expend[]" all funds before the expiration of the grant period). Accordingly, grantees generally obligate and expend their Byrne JAG funds over a sustained period of time. As of the filing of this supplemental brief, the Department's understanding is that all plaintiff jurisdictions in these consolidated appeals have unexpended FY 2017 Byrne JAG funds.

The district court deliberately structured its order to ensure that the Department could enforce the grant conditions if this Court were to vacate the injunction. The district court originally required the Department to "reissue the States' FY 2017 Byrne JAG award documents without" the challenged conditions.

3

App. 42. But the parties agreed to modification of the order to permit inclusion of the challenged conditions in the grant documents, while merely enjoining their enforcement, precisely to ensure that an appellate ruling would have a real practical effect. App. 45. The district court's action mirrors the steps taken by other district courts in related litigation over the Byrne JAG program to preserve the Department's appellate rights in these disputes. *See California ex rel. Becerra v. Sessions*, 2018 WL 6069940, at *2 (N.D. Cal. Nov. 20, 2018); *see also* Order, *City of Philadelphia v. Sessions*, No. 17-cv-3894 (E.D. Pa. June 28, 2018) (Dkt. No. 228, at 4), *aff'd in part and rev'd in part*, 916 F.3d 276 (3d Cir. 2019) (ordering issuance of grant documents to a plaintiff and requiring that the Department "process and approve" drawdowns of the funds "without regard to the Challenged Conditions"); *State of New York v. U.S. Dep't of Justice*, No. 18-cv-6471, Dkt. No. 117, at 2 (collecting additional examples).

As a result, if this Court were to vacate the injunction against the Department's enforcement of the challenged conditions, plaintiffs would have the choice of obligating and expending their remaining funds subject to the conditions or terminating the award. That possibility alone suffices to preserve a live controversy for this Court's review. *See Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (alteration in original) (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984))).

4

Finally, if the mere award of the grants to plaintiffs, even without the funds' having been obligated or expended, were regarded as sufficient to render these appeals moot, the exception to mootness for cases capable of repetition but evading review would apply. *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (applying exception to challenge to procurement contracts "fully performed in less than two years after they were awarded," a period "too short to complete judicial review of the lawfulness of the procurement"). That is all the more true if plaintiffs were to actually obligate or expend all of their grant funds before the completion of litigation, as plaintiffs would then have every incentive to spend their funds immediately and insulate a favorable district court ruling from appellate review. The Department has already imposed substantively similar conditions on the FY 2018 Byrne JAG awards, which plaintiffs have likewise challenged, so there can be no doubt that the "the same legal issue in this case is likely to recur in future controversies between the same parties." *Id.* And if the issuance of the grant documents or the expenditure of the funds mooted the controversy, it would be clear that a live dispute would exist for a period "too short to allow full judicial review." *Id.*; *see City of Los Angeles v. Barr*, __ F.3d __, 2019 WL 3049129, at *4 (9th Cir. July 12, 2019) (concluding challenge to grant program was not moot "because any one grant cycle is too short to provide for meaningful review" and plaintiff might be subject to the same grant provisions in the future). Thus, however viewed, these appeals remain justiciable.

5

## II. 34 U.S.C. § 10153(A)(4) Authorizes The Notice Condition

As discussed in our briefing, the Assistant Attorney General had authority to impose the notice and access conditions at issue here because Congress specifically conferred authority to impose "special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). That provision alone justifies reversal of the injunction as to those provisions. But the notice condition is also justified by the provision of the Byrne JAG statute expressly requiring grant recipients to provide "[a]n assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require." *Id.* § 10153(A)(4).

The "criminal justice" programs funded by the Byrne JAG statute explicitly include "[l]aw enforcement" and "[c]orrections and community corrections" programs. 34 U.S.C. § 10152(a)(1)(A), (D); *see id.* § 10251(a)(1) (defining "criminal justice" to include "activities of corrections, probation, or parole authorities and related agencies assisting in the rehabilitation, supervision, and care of criminal offenders"). In this context, information about the date on which local law enforcement agencies release an alien qualifies as "programmatic" information. Such information is part and parcel of the operation of the state and local law enforcement entities that receive Byrne JAG funds.

6

In imposing the notice condition, the Department "reasonably require[d]" grant recipients to provide information crucial to the relationship between the funded local law enforcement entity and the federal government. As our briefs explain, such information is central to the federal government's enforcement of the immigration laws against individuals who states and localities have already taken into custody for their own criminal justice purposes. Gov't Br. 5-6; Reply 1; *see also* 8 U.S.C. § 1231(a)(1)(B)(iii), (a)(2), (a)(4)(A). It would be anomalous to presume that Congress intended to require the federal government to provide federal funds to entities that refuse to provide this basic cooperation necessary to the enforcement of federal immigration law. For the same reasons, the "access" condition is authorized by a companion provision, 34 U.S.C. § 10153(A)(5)(C), which requires a certification that an applicant has undertaken "appropriate coordination" with affected agencies.

Moreover, the provision of this information plainly serves the core purposes of the grant by promoting public safety. As the Ninth Circuit has recently observed in rejecting a challenge to the Department's use of immigration-related scoring factors in another grant program, the Department's "understanding that illegal immigration presents a public safety issue has been acknowledged by the Supreme Court." *City of Los Angeles*, __ F.3d at __, 2019 WL 3049129, at *9 (citing *Arizona v. United States*, 567

7

U.S. 387, 397-98 (2012), and *Demore v. Kim*, 538 U.S. 510, 518 (2003)).[2] There is thus no basis for concluding that the Department may not require, as a basic condition of receiving federal law enforcement grant dollars, that state and local law enforcement provide information about individuals held in their custody to enable federal law enforcement officials to take appropriate action.

That the Department may "reasonably require" that jurisdictions provide this programmatic information likewise underscores why 8 U.S.C. § 1373 is properly understood as an "applicable Federal law[]" with which Byrne JAG recipients must certify their compliance for purposes of 34 U.S.C. § 10153(A)(5)(D). As our briefs explain, § 1373 reflects Congress's expectation that permitting states and localities to exercise their regulatory authority over aliens prior to their removal from the country will not impede the federal government's own enforcement of the immigration laws. *See* Gov't Br. 30-32; Reply 20-21. The close nexus between state and local law enforcement programs funded by the Byrne JAG program and the federal

---

[2] The *City of Los Angeles* court also rejected another argument identical to one the City advances here. The plaintiff there challenged scoring factors used to evaluate applications for a community policing grant administered by the Department. The Ninth Circuit observed that there was no "clear notice" concern under the Spending Clause arising from "surprise or ambiguous conditions on recipients of the funds" where "the immigration-related conditions were clearly presented in the Application Guidelines and Certification." __ F.3d at __, 2019 WL 3049129, at *7; *see id.* at *6 (observing that clear notice issues arise with "post acceptance or 'retroactive' conditions" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981))). As the Department has explained, the City's clear notice argument in this case should be rejected for the same reason. *See* Reply 14-15.

8

government's own law enforcement interests in the immigration realm highlights why § 1373 is among the "applicable Federal laws" with which grantees must certify their compliance. Just as Congress has given the Department the power to ensure that jurisdictions provide specified programmatic information critical to the enforcement of federal law before releasing aliens from criminal custody back into the community, Congress has ensured that jurisdictions seeking federal law enforcement grant funds do not impose unlawful restrictions on the sharing of information related to immigration status in response to requests from federal officials.

## CONCLUSION

For the foregoing reasons, as well as those explained in our briefs, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
   *Assistant Attorney General*
MARK B. STERN
DANIEL TENNY

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7256*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-7823*
   *bradley.a.hinshelwood@usdoj.gov*

July 2019

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's order of July 10, 2019, capping the supplemental brief at fifteen double-spaced pages, because it is nine double-spaced pages long. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

        *s/ Brad Hinshelwood*
        Brad Hinshelwood