# 19-267 (L)
# 19-275 (con.)

## United States Court of Appeals
## for the Second Circuit

STATE OF NEW YORK, STATE OF CONNECTICUT, STATE OF
NEW JERSEY, STATE OF WASHINGTON, COMMONWEALTH OF
MASSACHUSETTS, COMMONWEALTH OF VIRGINIA, STATE OF
RHODE ISLAND, CITY OF NEW YORK,

*Plaintiffs-Appellees,*

*against*

UNITED STATES DEPARTMENT OF JUSTICE,
WILLIAM P. BARR, in his official capacity as Attorney
General of the United States,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York

## SUPPLEMENTAL BRIEF FOR CITY OF NEW YORK

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
 *of Counsel*

July 26, 2019

ZACHARY W. CARTER
*Corporation Counsel*
*of the City of New York*
100 Church Street
New York, New York 10007
212-356-2490 or -2500
jdavies@law.nyc.gov

Reproduced on Recycled Paper

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT

POINT I

    AS THE DOJ CONCEDES, THE CITY'S CHALLENGE TO
    THE FISCAL YEAR 2017 GRANT CONDITIONS REMAINS
    LIVE ..................................................................................................... 2

POINT II

    SECTION 10153(a)(4) CANNOT JUSTIFY THE
    CHALLENGED CONDITIONS ...................................................... 4

POINT III

    THE DOJ'S REMAINING ARGUMENTS ARE BEYOND
    THE SCOPE OF THIS COURT'S ORDER AND, IN ANY
    EVENT, MERITLESS ................................................................... 11

CONCLUSION ...................................................................................... 14

CERTIFICATE OF COMPLIANCE ...................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Los Angeles v. Barr*,
— F.3d. —, 2019 U.S. App. LEXIS 20706 (9th Cir. July
12, 2019) ................................................................... 12, 13

*City of Philadelphia v. Attorney General of the United States*,
916 F.3d 276 (3d Cir. 2019) ................................................. 6

*Duncan v. Walker*,
533 U.S. 167 (2001) .......................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*,
528 U.S. 167 (2000) .......................................................... 3

*N.Y. State Nat'l Org. for Women v. Terry*,
159 F.3d 86 (2d Cir. 1998) .................................................. 3

*Niagara Mohawk Power Corp. v. Hudson River-Black River
Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012) .................................................. 4

*Sandifer v. U.S. Steel Corp.*,
571 U.S. 220 (2014) .......................................................... 9

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) .......................................................... 4

**Statutes**

34 U.S.C. § 10152(a)(1) .................................................. 5, 6, 10

34 U.S.C. § 10153(a)(4) ..................................................... *passim*

34 U.S.C. § 10388 ............................................................ 12

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Other Authorities**

Examining Mismanagement in Office of Justice Programs
Grantmaking, 114 Cong. 141 (2016) (Statement of Beth
McGarry), https://perma.cc/4YX5-WNCZ...........................................9

H.R. Rep. No. 109-233 (2005)....................................................................6

Office of Justice Programs, *FY 2017 and FY 2018 JAG
Award Special Notices*, https://perma.cc/X9SP-P48X ........................2

Office of Justice Programs, *JAG Questionnaires*,
https://perma.cc/6L22-GNHS ............................................................8

## PRELIMINARY STATEMENT

The City of New York submits this supplemental brief to address the two questions raised in this Court's July 10, 2019 order. As to the first question, we agree with the DOJ that a live controversy persists. The challenged conditions remain in the City's Byrne JAG award documents, and the DOJ intends to enforce them against grantees if and when an injunction prohibiting their enforcement is dissolved.

As to the second question, the DOJ concedes that 34 U.S.C. § 10153(a)(4) does not support two of the challenged conditions. And it is mistaken in arguing that § 10153(a)(4) supports the third—the "notice" condition. The statute limits the information that grantees must provide to "programmatic and financial" data related to the specific grant-funded initiative administered by the grantee. It does not give the DOJ the sweeping power to require grantees to provide any state and local law enforcement information—including the release date of individuals in custody—to the federal government on demand.

**ARGUMENT**

**POINT I**

**AS THE DOJ CONCEDES, THE CITY'S CHALLENGE TO THE FISCAL YEAR 2017 GRANT CONDITIONS REMAINS LIVE**

We agree with the DOJ that this appeal continues to present a live controversy (Supplemental Brief for Appellants ("Supp. App. Br.") 2–5), even though the City received its fiscal year 2017 Byrne JAG funds under an injunction granted in favor of the U.S. Conference of Mayors in *City of Evanston v. Barr*, No. 18-cv-4853 (N.D. Ill.), *appeal docketed* No. 18-3178 (7th Cir.). While the injunction may have prompted the DOJ to release the City's funds, it hardly led the agency to abandon enforcement of the challenged conditions against the City.

On the contrary, the DOJ has taken pains to ensure that the documentation awarding fiscal year 2017 funds to the City and other grantees still includes the challenged conditions (*see* Joint Appendix ("A") 45). We do not have to guess the reason why the DOJ has gone to such lengths, because it has told us: the DOJ intends to "use or enforce those conditions" against grantees if the *Evanston* injunction is lifted on appeal. *See* Office of Justice Programs, *FY 2017 and FY 2018 JAG Award Special Notices*, https://perma.cc/X9SP-P48X; *see also* SDNY

2

ECF No. 72 ("If the injunction … was to be dissolved or reversed on appeal, the Government reserves the right to enforce the challenged conditions."). The DOJ's conduct in this case drives the point home: given the opportunity, it has every intention of delivering on its promise to deny the City as much of its fiscal year 2017 funding as it can.

To be clear, when we talk about fiscal year 2017 awards, we are referring to the year the grant was awarded, not the year in which the grant funds will necessarily be spent, as each grant covers a four-year period (*see* Supp. App. Br. 3 (citing 34 U.S.C. § 10152(f))). That means that recipients—including the City—are yet to use all their funds, and many will not for approximately two more years. The upshot is that grant recipients face a continuing threat that dispersed funds may later be taken away based on the enforcement of the challenged conditions. That is more than enough to give the City a "legally cognizable interest in the outcome" of this appeal. *N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91 (2d Cir. 1998) (quotation marks omitted). Given the DOJ's stance, it is certainly not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 190 (2000).

At the same time, the parties continue to litigate materially identical conditions for fiscal year 2018 awards, so a dismissal for mootness would merely require the parties to reargue the merits when an eventual decision for that year is appealed. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (explaining that "a public interest in having the legality of the practices settled militates against a mootness conclusion"). The Court should rule now.

## POINT II

### SECTION 10153(a)(4) CANNOT JUSTIFY THE CHALLENGED CONDITIONS

Section 10153(a)(4) requires each applicant for a Byrne JAG grant to provide an "assurance" that it will "maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require" for "each fiscal year covered by an application." 34 U.S.C. § 10153(a)(4). This provision does not support the challenged conditions, which is perhaps why the DOJ mentioned it only in passing before (*see* Opening Brief for Appellants 22).[1] Even now,

---

[1] *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("It is a settled appellate rule that issues adverted to

*(cont'd on next page)*

4

the DOJ makes no claim that the provision justifies the "access condition" or the "§ 1373 condition," and rightly so, as neither condition mandates the reporting of information at all.

So, if § 10153(a)(4) has any relevance here it can only be as to the "notice condition," which requires state and local governments to implement a policy to supply the federal government on request with "advance notice of the scheduled release date and time for a particular alien" (A292). But § 10153(a)'s various prescriptions for the *form* of Byrne JAG applications would be an unlikely place for Congress to bury such a profound power, and indeed subsection (a)(4) is merely a mechanism for the DOJ to gather the kind of information needed to audit grant compliance and performance. Through it, the DOJ can obtain information to verify that a grantee has used Byrne JAG funds to advance initiatives within the bounds set by Congress, *see* 34 U.S.C. § 10152(a)(1)(A)–(H); to check that the grantee has complied with *valid* grant conditions, like the statutory requirement that Byrne JAG funds supplement rather than displace state and local funding, *see id.*

---

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quotation marks omitted).

§ 10153(a)(1); and to evaluate the effectiveness of the applicant's chosen initiatives, as part of a "program assessment," *id.* § 10152(c)(1).

In other words, § 10153(a)(4) is about grant performance and accountability. That is why it calls for "programmatic and financial" data—precisely the sort of information that would enable a grant-auditing process. An alien's release date is self-evidently not "financial" information. Nor is it "programmatic," a term that refers to "the programs to which [the] funds are directed." *City of Philadelphia v. Attorney General of the United States*, 916 F.3d 276, 285 (3d Cir. 2019). The language harkens back to 34 U.S.C. § 10152(a)(1), where, consistent with the congressional design to give state and local governments "more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution," H.R. Rep. No. 109-233, at 89 (2005), Congress gave grantees the freedom to fund initiatives in one of eight enumerated "program" areas. *See* 34 U.S.C. § 10152(a)(1)(A)–(H). So, if a grant recipient uses funds for a local drug treatment facility, *id.* § 10152(a)(1)(E), then the DOJ may request information needed to assess the funding and operation of that local

6

facility, not any conceivable information that the grantee has touching on law enforcement writ large that the federal government finds useful.

This grant-auditing focus is also why § 10153(a)(4) requires grant recipients to "maintain" data in the first place, not just report it: the point is for recipients to collect information needed to assess grant compliance and performance, not to report any of the wide array of preexisting state and local law enforcement data the federal government might find desirable for its own non-grant-related purposes. And this grant-auditing function is also why the provision only requires an applicant to supply a report "for each fiscal year covered by an application," 34 U.S.C. § 10153(a)(4), rather than on an ongoing basis, on written request, without limit (A292).

Beyond the statutory text, structure, and purpose, the solicitation for Byrne JAG applications confirms our understanding, explaining that the Office of Justice Programs (OJP) "will require each successful applicant to submit specific performance measures data as part of its reporting under the award" and that the application should "describe the applicant's plan for the collection of all of the performance measures data listed in the JAG program accountability measures" (A202). And

7

the OJP provides grantees a series of questionnaires to fill out with information about the program funded by the grant, all of which are different depending on what kind of program a state or local government chooses to fund, such as public defense, forensics, or behavioral health. *See* Office of Justice Programs, *JAG Questionnaires*, https://perma.cc/6L22-GNHS. All of this reflects a shared understanding that, under § 10153(a)(4), the grantee should provide, and the OJP should evaluate, information about the particular initiative funded by the grant.

The OJP has also used the term "programmatic" in other contexts to refer to auditing the performance of a specific grant award. For example, in a statement submitted to the House Oversight Committee, the Principal Deputy Assistant Attorney General for the OJP explained that "programmatic monitoring" refers to "assessing and verifying … that grant activities are consistent with the proposed project activities, award goals and objectives are being accomplished, and award terms and conditions and other administrative and reporting requirements

are being met."[2] All of the monitoring to which the OJP refers, such as whether a grant is used consistent with the original purpose and is accomplishing its goals, relates to the specific grant.

Adopting the DOJ's alternate construction would require divorcing § 10153(a)(4) from its "statutory context," *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 230 (2014), and render the bulk of it, in particular the "each fiscal year" language, "superfluous, void, or insignificant," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotation marks omitted). The DOJ spends remarkably little space in its supplemental brief supporting its argument that the text of § 10153(a)(4) authorizes the notice condition (Supp. App. Br. 6–7). It argues that the statute authorizes the notice condition because two of the eight program areas for which Byrne JAG funds may be used—viewed in the abstract, without regard to how specific grant funds are allocated—have an arguable connection with the release of prisoners from custody (*id.*).

---

[2] Examining Mismanagement in Office of Justice Programs Grantmaking, 114 Cong. 141 (2016) (Statement of Beth McGarry), *available at* https://perma.cc/4YX5-WNCZ.

9

This dramatically overreads the scope of § 10153(a)(4). Under the DOJ's reading, the Attorney General could request any information, at any time, about any local or state government operation that is within one of the eight Byrne JAG categories, regardless of whether the grantee even operates a program in that category. So, the DOJ could require a grantee to provide reports about its "[d]rug treatment and enforcement programs," 34 U.S.C. § 10152(a)(1)(E), even if that jurisdiction only uses Byrne JAG funds for "[p]rosecution and court programs," 34 U.S.C. § 10152(a)(1)(B). The breadth of the DOJ's interpretation of "programmatic" is implausible on its own terms and in the broader statutory context.

The DOJ's remaining arguments are entirely unmoored from the statute. It contends that alien release dates are "part and parcel of the operation of the state and local law enforcement entities that receive Byrne JAG funds," that the information is "central to the federal government's enforcement of the immigration laws," and that its provision serves "the core purpose of the grant by promoting public safety" (Supp. App. Br. 6–7). While the City has shown that, in fact, imposition of the conditions is likely to harm public safety (*see* Brief for

10

the City of New York ("City Br.") 10–12), more critically, the DOJ's arguments say nothing about whether the release dates of aliens in custody constitute "programmatic" information and provide no support for the contention that the notice condition is authorized by the statute. The DOJ's minimal attempt to link the notice condition to the statutory text speaks for itself.

## POINT III

### THE DOJ'S REMAINING ARGUMENTS ARE BEYOND THE SCOPE OF THIS COURT'S ORDER AND, IN ANY EVENT, MERITLESS

The DOJ goes on to make two arguments that are beyond the scope of the supplemental briefing order and that are meritless in any event. First, while not arguing that § 10153(a)(4) authorizes the § 1373 condition, the DOJ contends that it "underscores" why § 1373 is an "applicable federal law" (Supp. App. Br. 8–9). But the DOJ merely rehashes the arguments made in its earlier briefing. The City has already explained why § 1373 is not an applicable federal law (*see* City Br. 30–39). If anything, the requirement that grantees provide "programmatic" information, *i.e.* information related to the initiative a state or local government chooses to fund, is more consistent with a

11

concomitant limitation of the phrase "applicable federal laws" to laws applicable to the grant program.

Second, the DOJ argues that the Ninth Circuit's recent decision in *City of Los Angeles v. Barr*, — F.3d. —, 2019 U.S. App. LEXIS 20706 (9th Cir. July 12, 2019), supports its contention that the challenged conditions do not violate the clear-notice rule (Supp. App. Br. 8 n.2). But the DOJ conflates the plaintiff's argument in *City of Los Angeles* that Congress *could not* delegate to the DOJ the power to give "additional consideration to applicants" that chose immigration-related goals for COPS grants, *City of Los Angeles*, 2019 U.S. App. LEXIS 20706, at *17, with our argument here that that Congress *did not* delegate that power to the DOJ in the Byrne JAG program (City Br. 36–37). It was undisputed in *City of Los Angeles* that "Congress delegated the task of specifying these conditions to DOJ." *City of Los Angeles*, 2019 U.S. App. LEXIS 20706, at *21 n.6; *see also* 34 U.S.C. § 10388 (granting the Attorney General "[g]eneral regulatory authority" to "promulgate regulations and guidelines" to administer COPS grants). The Ninth Circuit's decision thus has no bearing on our argument here.

12

Moreover, the court in *City of Los Angeles* disclaimed any broader holding that might cover the Byrne JAG grant program and emphasized the "limited nature of the dispute." *Id.* at *17. The court explained that its holding was limited to the DOJ's decision to award additional points to applicants who chose to focus on illegal immigration and execute a certification agreeing to conditions substantially similar to the notice and access conditions. *Id.* And it was careful to note that, unlike here, "[c]hoosing the illegal immigration area and submitting the Certification are not conditions of receiving a grant, and numerous applicants received grants without doing so." *Id.*

\* \* \*

In sum, § 10153(a)(4)'s narrow requirement that an applicant assure that it will provide "programmatic" and "financial" information for "each fiscal year" of the grant does not authorize the DOJ to require the provision of on-demand information about prisoner release dates. The DOJ's bare assertion that release-date information is programmatic ignores both the statute's text and context and, like the DOJ's other statutory arguments, seeks to shoehorn an unlimited delegation of power into a statutory subsection that is ill suited for it.

13

This attempt, like the others, should be rejected. The DOJ's excursions into additional arguments beyond the scope of this Court's order add nothing to what the parties have already presented and should likewise be rejected.

## CONCLUSION

The district court's order should be affirmed.

Dated: New York, NY
July 26, 2019

Respectfully submitted,

ZACHARY W. CARTER
*Corporation Counsel*
*of the City of New York*

By: */s/ Jamison Davies*
JAMISON DAVIES
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-2490
jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the Court's July 10, 2019 supplemental briefing order because it contains no more than fifteen double-spaced typed pages.

_____/s/ Jamison Davies_____