# 19-267(L)

19-275(CON)

# United States Court of Appeals for the Second Circuit

STATE OF NEW YORK, STATE OF CONNECTICUT, STATE OF NEW JERSEY, STATE OF WASHINGTON, COMMONWEALTH OF MASSACHUSETTS, COMMONWEALTH OF VIRGINIA, STATE OF RHODE ISLAND, CITY OF NEW YORK,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM P. BARR, in his official capacity as Attorney General of the United States,

*Defendants-Appellants*.

On Appeal from the United States District Court for the Southern District of New York

**SUPPLEMENTAL BRIEF FOR APPELLEES STATES OF NEW YORK, CONNECTICUT, NEW JERSEY, RHODE ISLAND, AND WASHINGTON, AND COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA**

BARBARA D. UNDERWOOD
  *Solicitor General*
ANISHA S. DASGUPTA
  *Deputy Solicitor General*
LINDA FANG
  *Assistant Solicitor General*
    *of Counsel*
*Counsel listing continues on signature pages.*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for State Appellees
28 Liberty Street
New York, New York 10005
(212) 416-8656

Dated: July 26, 2019

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 4

POINT I

THIS APPEAL IS JUSTICIABLE ....................................................................... 4

POINT II

34 U.S.C. § 10153(a)(4) DOES NOT AUTHORIZE ANY OF THE CHALLENGED CONDITIONS ................................................................... 5

CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Beecham v. United States*,
   511 U.S. 368 (1994) .................................................................................. 8

*City of Chicago v. Sessions*,
   888 F.3d 272 (7th Cir. 2018) .................................................................. 6, 8

*City of Los Angeles v. Barr*,
   ___ F.3d ___, 2019 WL 3049129 (9th Cir. July 12, 2019) ..................... 7

*City of Philadelphia v. Attorney General of the United States*,
   916 F.3d 276 (3d Cir. 2019) ................................................................... 6, 8

**Laws**

6 U.S.C. § 612 ............................................................................................... 10

31 U.S.C. § 1115 ............................................................................................. 9

34 U.S.C.
   § 10102 ...................................................................................................... 9
   § 10153 ............................................................................................. passim
   § 10229 ...................................................................................................... 9
   § 11322 .................................................................................................... 10

**Legislative History**

H.R. Conf. No. 110-259 (2007) (Conf. Rep.) ........................................... 10

**Miscellaneous Authorities**

Dep't of Justice, Bureau of Justice Assistance, *Justice Assistance Grant (JAG) Program, Accountability Measures: Corrections Module*, at https://bjapmt.ojp.gov/help/JAGDocs /09_JAG%20 Corrections%20Questionnaire_508.pdf ............................................. 12

**Miscellaneous Authorities**                                                                                  **Page(s)**

Dep't of Justice, Bureau of Justice Assistance, *Reporting Requirements for JAG*, *at* https://www.bja.gov/Funding/JAG_Reporting.pdf .................................................................................. 11

Dep't of Justice, *DOJ Grants Financial Guide* (Dec. 2017), *at* https://ojp.gov/financialguide/doj/pdfs/DOJ_FinancialGuide.pdf ......... 11

Dep't of Justice, *Final Report: FY 2015 DOJ Programmatic and Financial Monitoring Levels* (Sept. 2016), *at* https://ojp.gov/about/pdfs/FY2015_AnnualMonitoringReport.pdf ............................. 11

## INTRODUCTION

The States of New York, Connecticut, Massachusetts, New Jersey, Rhode Island, Virginia, and Washington (the States), submit this supplemental brief in accordance with the Court's Order of July 10, 2019, which directed the parties to address (1) whether plaintiffs' challenges to the Fiscal Year (FY) 2017 Edward Byrne Memorial Justice Assistance Grant (Byrne JAG) conditions remain justiciable despite the Department of Justice (DOJ) having "processed" most state and local FY 2017 Byrne JAG awards; and (2) whether any of the challenged conditions are authorized by 34 U.S.C. § 10153(a)(4)'s provision for Byrne JAG applications to include "[a]n assurance that . . . the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require."

The States agree with DOJ that this appeal remains justiciable. Although DOJ has disbursed the States' FY 2017 Byrne JAG funds to them, the disputed conditions are still part of the States' FY 2017 Byrne JAG award documents, and DOJ maintains that it intends to enforce the conditions should the district court's ruling be reversed. Thus, a live controversy exists.

34 U.S.C. § 10153(a)(4) does not provide authority for any of the three requirements at issue in this case. DOJ does not contend that § 10153(a)(4) authorizes its requirement that grantees certify and monitor compliance with 8 U.S.C. § 1373 ("§ 1373 condition"), or its requirement that grantees provide federal immigration officials with physical access to grantee correctional facilities ("Access condition"). DOJ contends only that advance notice of the scheduled release dates of particular persons in a grantee's custody ("Notice condition") constitutes "programmatic" information that it is permitted to request under § 10153(a)(4).

Contrary to DOJ's arguments, § 10153(a)(4) does not empower DOJ to condition Byrne JAG funding on an agreement to provide whatever information DOJ may deem important to federal law enforcement interests (Supp. Br for Appellants (Supp. Br.) at 1-2, 7). That reading of § 10153(a)(4) is inconsistent with the structure of the Byrne JAG program, which Congress constituted as a mandatory formula grant to be awarded to States and localities based on crime rate and population, in order to allow States and localities to advance their own law enforcement policies and interests.

Nor do the release dates of particular persons qualify as "programmatic" information under § 10153(a)(4), even for Byrne JAG grantees who use their funding for corrections. "Programmatic" information concerns grant performance matters of the type that DOJ must monitor in its role as grant administrator. This is clear from the structure of § 10153 and from the ways that Congress uses the term "programmatic" in statutes addressing other federal grant programs. Release dates are not "programmatic" information because they do not pertain to how a Byrne JAG-funded program is performing or concern how Byrne JAG funds are being used.

# ARGUMENT

## POINT I

### THIS APPEAL IS JUSTICIABLE

As acknowledged by DOJ, there continues to be a live controversy between the parties. Although DOJ issued the States' respective FY 2017 Byrne JAG award letters in June 2018, the awards contained the challenged conditions, and the States were required to accept the disputed conditions in order to "validly" accept the Byrne JAG awards and receive the grant funds. (*See, e.g.*, Joint Appendix (JA) 185-186, 270.) The States accordingly commenced this action. Thereafter, the district court enjoined DOJ from enforcing the challenged conditions against the States, and mandated that DOJ disburse the FY 2017 Byrne JAG funds without regard to the conditions. (JA 42-43.) The States subsequently accepted their FY 2017 Byrne JAG awards without accepting the enjoined conditions. However, this appeal concerning DOJ's authority to impose and enforce the disputed conditions continues to be justiciable because the disputed conditions are still contained in the FY 2017 Byrne JAG award documents, and because DOJ has maintained that it intends to enforce the conditions in the event that the district court's ruling is reversed.

## POINT II

### 34 U.S.C. § 10153(a)(4) DOES NOT AUTHORIZE ANY OF THE CHALLENGED CONDITIONS

In constituting Byrne JAG as a mandatory formula grant, Congress directed that every State shall receive Byrne JAG funds upon a "request" made through the application process set forth in 34 U.S.C. § 10153(a). And § 10153(a), in turn, provides for Byrne JAG applications to contain "[a]n assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require." 34 U.S.C. § 10153(a)(4).

DOJ does not contend that § 10153(a)(4) authorizes either the Access condition or the § 1373 condition. *See* Supp. Br. at 6-8. Nor could it. The Access condition requires that grantees give federal immigration officials physical access to state and local correctional facilities to question suspected aliens. And the § 1373 condition requires grantees to certify compliance with 8 U.S.C. § 1373 and monitor all subgrantees for ongoing compliance with § 1373. None of these actions amount to maintaining and reporting data, records, or "programmatic and financial" information. The same is true of the Notice condition's

5

requirement to provide federal immigration officials with the scheduled dates of release for particular persons in grantee custody. *See City of Philadelphia v. Attorney General of the United States*, 916 F.3d 276, 285 (3d Cir. 2019) (holding that the Notice condition is not authorized by § 10153(a)(4)); *City of Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir.), *vacated in part on other grounds*, 2018 WL 4268817 (7th Cir. 2018) (same).

DOJ ignores the structure of the Byrne JAG statute when contending (Supp. Br. at 7) that § 10153(a)(4) authorizes it to condition Byrne JAG funds on a grantee's willingness to provide whatever information DOJ may deem important to federal law enforcement interests. Congress did not constitute Byrne JAG as a discretionary grant scheme, or as an incentive for grantees to report information to the federal government. Congress instead established Byrne JAG as a mandatory formula grant, to be awarded to state and local jurisdictions based on crime rate and population, in order to provide a flexible and reliable funding stream for

advancing *state and local* law enforcement priorities.[1] Br. for State Appellees (States' Br.) at 4-5.

DOJ is equally mistaken in positing that § 10153(a)(4) can serve as a basis for the Notice condition on the theory that release dates relate to correctional programs and are thus "part and parcel of the operation of the state and local law enforcement entities that receive Byrne JAG funds." *See* Supp. Br. at 6. This argument ignores § 10153(a)(4)'s specification that the information DOJ requests must be "programmatic."[2] As shown by the structure of § 10153 and by Congress's use of the term "programmatic" in connection with other grant programs, the term "programmatic" in § 10153(a)(4) refers to Byrne JAG-funded programs, as opposed to the grantee's law enforcement operations more generally.

---

[1] DOJ is therefore not aided by a recent Ninth Circuit ruling rejecting a challenge to DOJ's use of "immigration-related scoring factors" in administering a distinct, *discretionary* law enforcement grant. *See* Supp. Br. at 7-8 (discussing *City of Los Angeles v. Barr*, ___ F.3d ___, 2019 WL 3049129 (9th Cir. July 12, 2019)). *City of Los Angeles* is also distinguishable because the "immigration-related scoring factors" there did not conclusively determine who would receive grant funds. *See* 2019 WL 3049129 at *5. Here, in contrast, DOJ has made acceptance of the challenged conditions a requirement to receive any Byrne JAG funds.

[2] DOJ does not contend that release date information qualifies as data, records, or financial information under § 10153(a)(4).

Courts frequently look to the structure of a statute when attempting to resolve disputes over the scope of undefined statutory terms. *See Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."). Here, it is significant that all the provisions neighboring § 10153(a)(4) concern ministerial assurances relating to the application process. *See City of Philadelphia*, 916 F.3d at 288 (ministerial nature of other provisions in statute counsels against construing one subsection as conferring broad substantive powers); *City of Chicago*, 888 F.3d at 285 (same). For example, § 10153(a)(2) provides that applications must contain assurances that the application was submitted for review by appropriate state and local authorities, and § 10153(a)(3) requires assurances that the application was subject to public review and comment. Section 10153(a)(5)(B) requires that applicants affirm the accuracy of the information contained in the applications, and § 10153(a)(5)(A) requires assurances that the programs to be funded comport with Byrne JAG requirements. The structure of § 10153 therefore counsels against construing § 10153(a)(4)'s reference to "programmatic" reporting as a

means for DOJ to impose broad ranging demands for information concerning grantee activities that are not being funded by Byrne JAG.

Put another way, the scope of the "programmatic" reporting authorized by § 10153(a)(4) must be viewed in the context of DOJ's role as the administering agency of Byrne JAG. In that capacity, DOJ oversees grantee expenditures of Byrne JAG funds to ensure that federal funds are being spent in ways consistent with the uses proposed in a grantee's Byrne JAG application, and DOJ is required by Congress to report on its grant administration activities. *See, e.g.*, 34 U.S.C. § 10102(b) (annual report by Office of Justice Programs to President and Congress); *id.* § 10229 (annual report on grant administration); *see also* 31 U.S.C. § 1115(b) (requiring detailed performance data on program activities within DOJ's purview, including the federal grants it administers). Section 10153(a)(4) enables DOJ to obtain the "programmatic and financial" information from grantees that DOJ needs to perform these reporting and oversight functions.[3]

---

[3] For example, the FY 2017 Byrne JAG awards issued by DOJ state that grantees must "collect and maintain data that measure the performance of effectiveness of work under this award" in order to facilitate DOJ's "compliance with" DOJ's congressional reporting obligations

9

Congress's use of "programmatic and financial" in the context of other grant schemes underscores that "programmatic and financial" reporting is intended to promote accountability and transparency as to the use of federal funds. For instance, Congress requires DOJ's audit office to conduct "programmatic and financial assessment[s]" in connection with juvenile justice grants to ensure, among other things, that appropriate financial records were provided, and grant funds were properly expended. *See* 34 U.S.C. § 11322(b)(1)(A)(i)-(iii). Similarly, Congress requires the Department of Homeland Security to conduct "a programmatic and financial review" of all disaster-prevention and preparedness grants every two years, 6 U.S.C. § 612(a)(2)(A), for the purpose of determining "whether grant funds are being used properly and effectively," H.R. Conf. No. 110-259, at 295 (2007) (Conf. Rep.); *see also* 6 U.S.C. § 612(a)(2)(B)(i)-(ii). And DOJ's own audit office uses the term "programmatic and financial" in the context of discussing grant monitoring focused on program "integrity and accountability of

---

concerning program performance and fiscal accountability. (JA 278 ¶ 12 ("Requirement for data on performance and effectiveness under the award"), 286 ¶ 43 ("Reporting requirements").)

10

grantees." *See* DOJ, *Final Report: FY 2015 DOJ Programmatic and Financial Monitoring Levels* 2 (Sept. 2016). Nothing in the text or structure of § 10153(a)(4) suggests that Congress intended "programmatic and financial" reporting to mean something different in the Byrne JAG program.

Indeed, DOJ's long-standing approach to administering Byrne JAG and other grants is consistent with the understanding that the reporting authorized by § 10153(a)(4) pertains to accountability in the expenditures of federal funds. DOJ's financial guide for grantees, for example, explains that required programmatic reports "describe the status of the funds or the project" and "compare actual accomplishments to objectives." DOJ, *DOJ Grants Financial Guide* (Dec. 2017), § 3.15 Reporting Requirements 121. Prior to DOJ's introduction of the Notice requirement, the only program-related reporting that DOJ required of Byrne JAG grantees concerned periodic performance metrics, financial reporting on Office of Management and Budget-standardized forms, and program progress reports. *See* DOJ, Bureau of Justice Assistance (BJA), *Reporting Requirements for JAG* (chart listing Byrne JAG reporting requirements). All of that required reporting pertained to programs funded by Byrne

11

JAG monies. Similarly, the current Byrne JAG performance measurement questionnaires that DOJ requires of grantees request reporting only of information about programs funded by Byrne JAG monies. Even where program-specific reporting is sought by DOJ's questionnaires, the requested information consists merely of general narratives and statistical data concerning the funded programs.[4]

In sum, providing the date of a particular individual's release from state custody to federal immigration officials is not "programmatic" information within the meaning of § 10153(a)(4). Congress created no connection between the Byrne JAG program and federal immigration enforcement, and no provision of the Byrne JAG statute suggests that Congress intended Byrne JAG eligibility to turn on a grantee's willingness to redirect resources from state and local criminal justice efforts to assistance with federal immigration enforcement. See States' Br. at 21-23. Indeed, Congress has repeatedly declined to enact

---

[4] *See, e.g.*, DOJ, BJA, *Justice Assistance Grant (JAG) Program, Accountability Measures: Corrections Module* (inquiring about, among other things, type of facility (¶ 1), operational capacity (¶ 21), number of staff involved in program (¶ 24), and other statistical program data (¶ 26)).

12

legislation conditioning federal funding on grantee participation in immigration enforcement. See *id.* at 22 n.8.

Moreover, the vast majority of the States' Byrne JAG-funded projects involve activities other than corrections. As described in the States' response brief (at 7-8, 32), the States use Byrne JAG funds for a variety of purposes, including supporting gun and gang task forces, purchasing fingerprinting equipment, enhancing forensic laboratories, and providing community outreach services. Notifying federal immigration officials about a particular person's scheduled release date from a grantee's custody in no way constitutes information about such programs. And even where a grantee uses Byrne JAG funds for corrections programs, § 10153(a)(4) does not authorize the Notice condition because specific release dates of individuals do not relate in any way to the performance of a funded program, or concern how Byrne JAG funds are used.

## CONCLUSION

This Court should affirm the district court's rulings below.

Dated: New York, New York
July 26, 2019

                                          Respectfully submitted,

                                          LETITIA JAMES
                                            *Attorney General*
                                            *State of New York*
                                          Attorney for State Appellees

                                   By:   */s/ Linda Fang*
                                            LINDA FANG
                                            Assistant Solicitor General

BARBARA D. UNDERWOOD            28 Liberty Street
  *Solicitor General*                            New York, NY 10005
ANISHA S. DASGUPTA               (212) 416-8656
  *Deputy Solicitor General*
LINDA FANG
  *Assistant Solicitor General*
      *of Counsel*

*Counsel listing continues on next page.*

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
55 Elm Street
Hartford, CT 06106

GURBIR S. GREWAL
  *Attorney General*
  *State of New Jersey*
Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

MAURA HEALEY
  *Attorney General*
  *Commonwealth of*
  *Massachusetts*
One Ashburton Place
Boston, MA 02108

MARK R. HERRING
  *Attorney General*
  *Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Megan Chu, an employee in the Office of the Attorney General of the State of New York, hereby certifies that the brief complies with the typeface requirements of Rule 32(a)(5)-(6). Furthermore, this brief complies with the Court's July 10, 2019 supplemental briefing order because it contains no more than fifteen double-spaced typed pages.

                                                              /s/ *Megan Chu*