JOSÉ A. CABRANES, *Circuit Judge*, joined by DEBRA ANN LIVINGSTON, RICHARD J. SULLIVAN, JOSEPH F. BIANCO, WILLIAM J. NARDINI, and STEVEN J. MENASHI, *Circuit Judges*, concurring in the order denying rehearing *en banc*:

I concur in the order denying rehearing of this case *en banc*.

As a member of the unanimous panel in this case, I begin by observing that the panel opinion expressly underscored the importance of the issues involved in this appeal.[1] And yet, despite the controversy that this subject matter naturally engenders, the fact remains that the core questions on appeal are basic "questions of statutory construction."[2]

In her dissent from the Court's order denying rehearing *en banc*, Judge Pooler characterizes the outcome of this petition for rehearing *en banc* as "[a]stonishing[]"; asserts that she is "frankly, astounded," that the Court did not grant rehearing, particularly in light of the circuit split that now exists; and remarks that the contrary opinions of our sister circuits "call[] into serious question the correctness of our Court's rationale and conclusions."[3] Regardless of the differing opinions of those circuits, our Court's decision to deny rehearing—one made by an *en banc* court consisting of twelve

---

[1] *See New York v. Dep't of Justice ("DOJ")*, 951 F.3d 84, 90 (2d Cir. 2020) ("Th[is] case implicates several of the most divisive issues confronting our country … national immigration policy, the enforcement of immigration laws, the status of illegal aliens in this country, and the ability of States and localities to adopt policies on such matters contrary to, or at odds with, those of the federal government.").

[2] *Id*.

[3] *See post*, Pooler, J., dissenting from denial of rehearing *en banc*, at 1-3.

1

of our Court's thirteen active Circuit Judges—evinces an unmistakable truth: that, in the circumstances presented, reasonable judicial minds can differ as to whether the relevant statutory text permits the Department of Justice to impose the challenged conditions on grants of money to state and municipal law enforcement. There is nothing "astonishing" here about a disagreement among sister circuits, much less anything deserving the castigation by another colleague who asserts that our panel's decision is "wrong, wrong, and wrong again." [4]

Despite the vigor and intensity of Judge Pooler's dissent, she sheds little new substantive light on the debate.[5] Instead, Judge Pooler primarily marshals the

---

[4] *See post*, Lohier, J., concurring in denial of rehearing *en banc*, at 3. As the only active judge on a panel that includes Senior Judges Ralph K. Winter and Reena Raggi, I offer a sidebar comment in the nature of a point of personal privilege. Judge Lohier's opinion regarding rehearing—a concurrence which is functionally a dissent—is oddly focused on scolding several of his colleagues, comparing their votes in this case to those on prior *en banc* polls. These criticisms, unfounded on the merits, are addressed in the measured concurring opinion of Judge Sullivan, which I join in full. *See post*, Sullivan, J., concurring in denial of rehearing *en banc*, at 1-4.

[5] Of particular interest is Judge Pooler's silence on the panel opinion's note that Section 1373—the statute requiring cooperation between federal, state, and local law enforcement—need not be found constitutional in all applications in order to be upheld here in the narrow context of federal funding. *See New York v. DOJ*, 951 F.3d at 111-12. As recently reiterated by the Supreme Court, we are to afford a strong presumption "that an unconstitutional provision in a law is severable from the remainder of the law or statute." *Barr v. Am. Ass'n of Political Consultants, Inc.*, --- S. Ct. ----, 2020 WL 3633780, at *8 (2020) (citing *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)); *see also Seila Law LLC v. Consumer Financial Protection Bureau*, --- S. Ct. ----, 2020 WL 3492641 at *20 (2020) (noting that "in the absence of a severability clause, the traditional rule is that the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted" (internal quotation marks omitted)).

arguments of the various opinions of the First, Third, Seventh, and Ninth Circuits upholding injunctions that preclude enforcement of the conditions.[6] All of these opinions, save that of the First Circuit, were available to the panel prior to its issuing its decision. The panel opinion thoroughly addressed all of the reasons relied on by our sister circuits in their decisions rejecting the Department of Justice's position, and explained why, with due respect, it found each of those reasons unpersuasive with respect to the Certification, Notice, and Access Conditions, as well as the claim of unconstitutional commandeering under the Tenth Amendment to the Constitution.[7]

In concurring in the denial of rehearing, I need not restate the host of reasons already explained by Judge Raggi in her comprehensive and careful opinion (in which Judge Winter and I joined in full) as to why, in our view, our sister circuits were in error.[8] It does happen from time to time that our perspective differs from that of other

---

[6] *See generally City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020); *City of Philadelphia v. Attorney Gen.*, 916 F.3d 276 (3d Cir. 2019); *City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019); *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018).

[7] *See, e.g.*, *New York v. DOJ*, 951 F.3d at 103 ("We cannot adopt the Seventh or Ninth Circuit's conclusions because we do not think the Attorney General's authority to impose the three challenged conditions here derives from the words 'special conditions' or 'priority purposes.'"); *id*. ("The Third Circuit, however, viewed the Attorney General's statutory authority respecting Byrne Program grants as 'exceptionally limited.' … We do not.").

[8] Chief Judge Katzmann, in his opinion dissenting from denial of rehearing *en banc*, appears to fault the panel for relying on the phrase "form acceptable to the Attorney General" in Section 10153(a)(5)(D) to conclude that the Attorney General could require compliance certification to be in a form that identifies specific statutes, such as Section 1373. *See post*, Katzmann, *C.J.*, dissenting from denial of rehearing *en banc*, at 4-6. This is perplexing. If the Government invokes a statute as the source of authority for a challenged action, the Court is

3

Circuits. (The opinion of the First Circuit that was issued after our own and offered disparaging assessments of our panel's efforts deserves a personal "sidebar" comment, which I offer at the margin in note 9).[9]

---

obliged to construe that statute, regardless of whether the Government's urged construction persuades. *See United States v. Figueroa*, 165 F.3d 111, 114 (2d Cir. 1998) (Sotomayor, *J.*) ("We review issues of statutory construction de novo, and the language of a statute is our starting point in such inquiries." (internal citation omitted)). He also faults the panel for referring to the Attorney General's rulemaking authority, observing that DOJ did not rely on that authority in its brief to this Court, and specifically disavowed such reliance at oral argument in a related case before the Ninth Circuit. *See post*, Katzmann, *C.J.*, dissenting from denial of rehearing *en banc*, at 6-8. As a member of the panel, I offer two responses. First, Judge Raggi's opinion refers to the Attorney General's rulemaking authority in order to reinforce conclusions already reached on other grounds. Does disagreement about such a reference warrant *en banc* review? Second, and in any event, the statutory rulemaking authority applies generally to provisions of the Byrne grant. *See* 34 U.S.C. § 10155. These provisions authorize certain action by the Attorney General with respect to statutory requirements for compliance certification, notice, and access. With respect, I am at a loss to understand how a court can fairly assess the scope of that authority without taking into account that it is informed by a general rulemaking authority.

[9] The opinion of the First Circuit that Judge Pooler praises for its "apt[] observ[ations]" arguably deserves no direct response, being more notable for its tone than for its persuasive reasoning. A few citations will suffice as a mini-baedeker for the curious. Our construction of the statutory phrase "all other applicable Federal laws," 34 U.S.C. § 10153(a)(5)(D), is derided as "simplistic," *City of Providence*, 954 F.3d at 36; "strain[ing] credulity," *id*. at 37; "extravagant," *id*.; "blind[ly] allegian[t] to the dictionary," *id*.; and, relying on the author's favorite source for authority, "flout[ing] th[e] principle" that "[c]ourts generally ought not to interpret statutes in a way that renders words or phrases either meaningless or superfluous," *id*. at 37 (citing *United States v. Walker*, 665 F.3d 212, 225 (1st Cir. 2011)). Res ipsa loquitur. Meanwhile, the First Circuit makes no mention of the fact that the very definition of "applicable" on which our opinion relies has been employed by the Supreme Court. *See New York v. DOJ*, 951 F.3d at 106 n.21 (citing *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69-70 (2011) (construing provision of Bankruptcy Code)). Much less does it acknowledge that Congress's use of the word "all" in the phrase "*all* other applicable Federal laws" is a powerful signal of its intent to imbue the phrase with its broadest possible meaning. *Id*. at 106 (citing *Norfolk & W Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 128-29 (1991) (explaining that phrase "all other law" is "clear, broad, and unqualified")). It accuses our opinion of "reading the term 'applicable' out of the statute," *City of Providence*, 954 F.3d at 37, while failing even to acknowledge the opinion's argument that "the word 'applicable' does serve a limiting function in the statutory text," *New York v. DOJ*, 951 F.3d at 106. I am, frankly, astounded (as it were), that Judge Pooler applauds as an "apt[]

4

In the final analysis, the resolution of this dispute will be determined not by arithmetic, but rather, by the strength and persuasiveness of the several decisions. There can be little doubt that, in the fullness of time, the conflict among the Circuits will be resolved by our highest tribunal.

---

observ[ation]" the First Circuit's charge that, in construing 34 U.S.C. § 10153(a)(5)(D), this Court is simply "assuming" a legislative intent having no basis in statutory text or "sound principles of statutory construction." *City of Providence*, 954 F.3d at 36-37.