RICHARD J. SULLIVAN, *Circuit Judge*, joined by JOSÉ A. CABRANES, DEBRA ANN LIVINGSTON, and JOSEPH F. BIANCO, *Circuit Judges*, concurring in the order denying rehearing *en banc*:

I concur with the denial of *en banc* review for the reasons set forth in the panel's opinion and in Judge Cabranes's concurrence. I write separately only to address an erroneous and, to my mind, gratuitous point raised in Judge Lohier's concurrence.

The concurrence attacks the panel's opinion (and those who voted to deny rehearing *en banc*) for grafting onto the Byrne Memorial Justice Assistance Grant Program a condition that was not voluntarily and knowingly accepted by the States. In so arguing, the concurrence chides several judges – myself included – for singing a different tune last year when seeking rehearing *en banc* in *New York State Citizens' Coalition for Children v. Poole*, 935 F.3d 56, 59 (2d Cir. 2019) (Livingston, *J.*, dissenting from the denial of rehearing *en banc*). *See ante* at 6–7 (Lohier, *J.*, concurring in the denial of rehearing *en banc*). It suggests that the two cases are somehow indistinguishable, and that a vote to deny *en banc* rehearing here reflects bad faith or hypocrisy on the part of those who sought such rehearing in *Poole*. But as there is very little harmony between this case and *Poole*, a different tune is to be expected.

For starters, the grant condition imposed in *Poole* resulted in a seemingly nonsensical bargain for the States. *Poole* concerned whether, in exchange for partial reimbursement of certain foster care maintenance payments under the Adoption Assistance and Child Welfare Act of 1980, States had agreed to mandatory minimum foster care spending obligations. *Poole*, 935 F.3d at 58–59. Deciding that it had, the majority endorsed a perplexing interpretation of the grant program that New York had knowingly "relinquished to federal courts its longstanding control over discretionary judgments about payment rates for foster care providers in exchange for *partial* reimbursement of *some* expenses incurred in the care of a declining percentage of foster care children." *N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 91 (2d Cir. 2019) (Livingston, J., dissenting). And if that were not enough, the majority concluded that Congress intended for this strange deal to be enforceable through private litigation. *Id.* at 92; *see also Poole*, 935 F.3d at 59 (Livingston, J., dissenting from the denial of rehearing *en banc*).

Here, by contrast, the panel's interpretation of the Byrne Grant condition does not result in such a lopsided bargain. In simple terms, States may receive federal funding under the program so long as they do not actively interfere with federal immigration policy, among other things. *See New York v. Dep't of Justice*,

2

951 F.3d 84, 94–96 (2d Cir. 2020). While a State may determine that this is too great a concession – that the juice is not worth the squeeze – that is a decision that States are free to make ex ante based on their assessment of the costs and benefits of the grant program. And, unlike *Poole*, the panel here did not foist an implied cause of action on unwitting grant recipients. Put bluntly, this case is a far cry from *Poole*.

But that's not all; the posture in which the cases arrived before us could not have been more different. In *Poole*, the majority's interpretation imposed "post acceptance or 'retroactive' conditions" on New York, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981), requiring it to make mandatory payments and assume liability that it could not escape, having already accepted federal funds. By contrast, the plaintiffs here challenge a condition of which they received "advance notice" before they applied for federal funding. *New York*, 951 F.3d at 110 ("[P]laintiffs were given advance notice that their 2017 Byrne grant applications had to certify a willingness to comply with § 1373. Indeed, they were given such notice twice, first in 2016, and again in 2017."). In other words, *Poole* required us to determine whether New York knew the rules of the game when it agreed to play; here, the plaintiffs are well aware of the rules – they simply want us to change them before they step onto the court.

3

So, because the panel has not repeated the error permitted in *Poole*, and because the panel's opinion otherwise persuades me that its interpretation of the statute is the correct one, I concur in the denial of rehearing *en banc*.