KATZMANN, *Chief Judge*, dissenting from the denial of rehearing en banc:

I am usually reluctant to vote in favor of rehearing en banc, informed by the institutional experience of our Circuit and the explicit policy of the Federal Rules that en banc rehearing is ordinarily "not favored." Fed. R. App. P. 35(a). That institutional experience is one of general deference to panel adjudication—a deference which holds whether or not the judges of the Court agree with the panel's disposition of the matter before it. Thus, although I disagree with the panel's decision for the reasons stated by Judge Pooler and Judge Lohier, in the vast majority of cases I would have joined those of my colleagues who have voted against rehearing despite such disagreements with the panel's opinion.

Nevertheless, this is a rare case in which I respectfully believe we should have granted rehearing en banc. Judge Pooler and Judge Lohier have described in compelling detail why the panel's statutory analysis was mistaken. I write separately to highlight additionally that the panel did not adhere to the normal rules of appellate litigation to reach this result. In short, the panel reversed the district court's grant of partial summary judgment in favor of Plaintiffs based on legal arguments that Defendants either had not made, had abandoned, or had even expressly disavowed. Few principles are better established in our Circuit

than the rule that "arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005); *see Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). The panel opinion does not explain why a departure from this principle was warranted in this case, and I cannot see why it was.

As Judge Pooler and Judge Lohier each note, most of the substantive statutory issues here have been discussed at length by our sister Circuits, all of which persuasively differ from the panel's interpretations.[1] Those discussions

---

[1] With respect to the Notice Condition, Judge Ikuta's opinion for the Ninth Circuit, joined by Judge Bybee, demonstrates the deficiency in the panel's conclusion that the provision referring to "programmatic" information authorizes a condition requiring real-time reporting of information unrelated to a program funded by a Byrne JAG grant. *City of Los Angeles v. Barr*, 941 F.3d 931, 944–45 (9th Cir. 2019). So does Judge Selya's opinion for the First Circuit, joined by Justice Souter and Judge Barron, *City of Providence v. Barr*, 954 F.3d 23, 35–36 (1st Cir. 2020), and Judge Rendell's opinion for the Third Circuit, joined by Judges Ambro and Scirica, *City of Philadelphia v. Attorney General of U.S.*, 916 F.3d 276, 285 (3d Cir. 2019).

The panel's conclusion that the Access Condition is authorized by the statutory language requiring a certification "that there has been appropriate coordination with affected agencies" has been rejected in persuasive discussions by the First, Third, and Ninth Circuits. *See City of Providence*, 954 F.3d at 33 ("The text of the provision itself belies this jerry-built justification."); *City of Los Angeles*, 941 F.3d at 945 (the statutory language neither "support[s] DOJ's interpretation that a recipient must coordinate with DHS agents who are not part of a funded program" nor authorizes the imposition of "an ongoing obligation on the applicant to coordinate with DHS agents throughout the life of the grant"); *City of Philadelphia*, 916 F.3d at 285 (given Congress's choice of verb

illustrate well why the panel was mistaken to conclude that the Byrne JAG statute itself required the challenged conditions. But the panel also concluded that the Byrne JAG statute confers "considerable" discretion upon the Attorney General to set the substantive conditions for a successful grant application beyond those specifically required by the statute. *New York v. Dep't of Justice*, 951 F.3d 84, 103 (2d Cir. 2020); *see id.* at 103 n.18.[2] To reach this conclusion, the panel adopted two novel arguments that set its reasoning further apart from that of the other Circuits: first, that the Attorney General has discretion to impose

---

tense, language requiring certification that there "has been" appropriate coordination "does not serve as a basis to impose an *ongoing* requirement to coordinate on matters unrelated to the use of grant funds").

Our sister Circuits also cogently disagree with the panel's interpretation of the language "all other applicable federal laws" as authorizing the Certification Condition, *City of Providence*, 954 F.3d at 36–39; *City of Philadelphia*, 916 F.3d at 288–91. Judge Rovner's opinion for the Seventh Circuit, joined by Judge Bauer, further explains why the panel's interpretation of "all other applicable laws" creates serious constitutional problems. *City of Chicago v. Barr*, 961 F.3d 882, 906–08 (7th Cir. 2020) ("Congress, under its spending power, can attach only conditions that "bear some relationship to the purpose of the federal spending," and the universe of *all* federal laws as promoted by the Attorney General would necessarily include many laws that fail to meet that standard[,] . . . rendering the conditions ambiguous."); *see id.* at 933 (Manion, J., concurring in the judgment) (agreeing with and emphasizing this point).

[2]    This aspect of the panel's decision is concerning for the additional reason, helpfully explained by a group of former grant administrators as *amici curiae,* that it transforms the mandatory formula grant program Congress enacted into a discretionary one. *See* Br. of Former Grant Administrators as *Amici Curiae* Supporting Plaintiffs-Appellees and Supporting Rehearing En Banc at 2–12.

3

substantive conditions on grant recipients under various provisions of the Byrne JAG statute conferring authority over the "form" of an application, and second, that the Attorney General has such discretion under 34 U.S.C. § 10155, the provision conferring general rulemaking authority to carry out the Byrne JAG program. *See New York*, 951 F.3d at 104–05, 116–17, 121–22. Neither argument was properly raised on appeal.

      First, the panel holds that several provisions of the Byrne JAG statute, each authorizing the Attorney General to determine the "form" of an applicant's required certifications or assurances, delegates to the Attorney General the authority to fashion conditions on the receipt of Byrne JAG funds not already specified in the Byrne JAG statute. According to the panel, the Attorney General's authority is "evident in the requirement that Byrne grant applicants provide certification in a 'form acceptable to the Attorney General.'" *New York*, 951 F.3d at 105 (quoting 34 U.S.C. § 10513(a)(5)).[3]

---

[3]     In my view, the better interpretation of the statutory text is that Congress delegated authority only over the "form" of the certifications and assurances necessary for a Byrne JAG application, not their content. Without the benefit of adversarial briefing, the panel reached the opposite conclusion on the basis of a single dictionary definition. Relying on that dictionary definition, the panel concludes that the word "form" in this context refers to the document on which an applicant must provide any

The panel thought this question worthy of "only brief discussion," characterizing it as "not seriously disputed." 951 F.3d at 104. If that is an accurate description, it is only because Defendants had abandoned the argument the panel adopted. Defendants had argued the point in the district court, *see* Defs.' Mem. of Law at 19, *New York v. Dep't of Justice*, No. 1:18-CV-6474 (ER) (S.D.N.Y. Sept. 14, 2018), ECF No. 51. But the district court reached precisely the opposite conclusion in its well-reasoned opinion. *See New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 230 (S.D.N.Y. 2018). And the State Appellees defended that conclusion in clear terms on appeal. Br. of Appellees State of New York, et al., at 34 ("As the district court explained, the Byrne JAG statute's grant of authority to

---

requested information, and thereby concludes that Congress's choice of the word "form" was in fact meant to confer authority over an application's substance.

Dictionary definitions can be useful in interpreting statutory language, especially when trying to ascertain the meaning of a specialized term, or a term of art, or a word's usage at the time of the law's enactment. But because interpretive challenges often arise from the way a particular word is used in the context of the provision or statute as a whole, dictionaries are often less helpful in addressing them than we might hope. And in some cases "dictionaries must be used as sources of statutory meaning only with great caution." *United States v. Costello*, 666 F.3d 1040, 1043 (7th Cir. 2012) (Posner, J.). That is not only because "[d]ictionary definitions are acontextual," unlike statutory language, *id.* at 1044, but also because dictionary definitions—particularly dictionary definitions of common words—can supply a judge with many possible meanings and no reasoned basis to choose among them. We have referred to Judge Posner's discussion as "helpful cautionary advice," *United States v. Bove*, 888 F.3d 606, 608 n.5 (2d Cir. 2018) (Cabranes, J.), and I think that advice would have been well followed here with respect to the panel's interpretation of the word "form."

5

the Attorney General to prescribe the *form* of Byrne JAG applications and certifications, *see* 34 U.S.C. § 10153(a), cannot reasonably be construed as authorization to dictate *substantive* eligibility requirements beyond those set forth by Congress."). On appeal, Defendants argue that the *statute itself* makes certification of compliance with Section 1373 a condition of any Byrne JAG application, on the theory that Section 1373 is an "applicable Federal law," but do not argue that the Attorney General has the authority to "identify" Section 1373 as an "applicable" law by virtue of his authority over the "form" of an application, or otherwise has discretion to impose conditions in addition to those imposed by the statute. *See* Br. of Appellants at 26–27. The panel's brief discussion does not mention this history, or explain why it should not lead to the conclusion that Defendants had abandoned this particular argument.

Second, the panel also concluded that the Attorney General possessed additional authority to impose the Notice and Access Conditions pursuant to his authority, codified at 34 U.S.C. § 10155, to "issue rules to carry out" the Byrne JAG program. *See New York*, 951 F.3d at 116–17, 121–22. Whether or not the challenged conditions could be valid exercises of that authority, Defendants did not assert the Attorney General's Section 10155 rulemaking authority as a basis

6

for the challenged conditions either in the district court or on appeal. *See* Defs.' Mem. of Law, ECF No. 51; Br. for Appellants. I do not think the panel should have adopted it under the well-settled principles I have discussed above. *See JP Morgan Chase Bank*, 412 F.3d at 428; *Knipe*, 999 F.2d at 711. Having reached out to consider this argument, however, the panel should have stopped short again, because Defendants had already expressly stated to one of our sister Circuits that the challenged conditions were not promulgated as an exercise of the Attorney General's Section 10155 rulemaking authority. *See* Oral Arg. at 5:17–5:31, *City & Cty. of San Francisco v. Barr*, No. 18-17308 (9th Cir. Dec. 2, 2019), *available at* https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000016625.

\* \* \*

For the panel to rely on two legal bases for the challenged conditions that Defendants have not offered—and in one case, have disavowed—is especially troubling in the context of this case. As the Seventh Circuit has documented, "the Attorney General has presented the courts with one statutory 'authorization' after another for the decision to withhold all Byrne JAG funding from sanctuary

cities." *City of Chicago*, 961 F.3d at 920. In my view, there was no reason for the panel to add to that mix two arguments that were never presented to this Court.[4]

Considering only the arguments presented by the parties in this case, I would interpret the Byrne JAG statute as Judge Pooler lays out. If the Attorney General was without discretion (or did not exercise what discretion he has) to impose the challenged conditions, then, as Judge Pooler explains, the challenged conditions can survive a Spending Clause challenge only if the statute imposes them unambiguously. For the reasons explained by Judge Pooler and Judge Lohier, it does not. To be sure, I believe Judge Pooler's reading of the statute is the better one on its own terms, but those who find the statutory language

---

[4] Judge Cabranes downplays the panel's reliance on these two unpreserved arguments as unremarkable or unworthy of en banc review. Ante at 3–4 n.8 (Cabranes, J., concurring in the denial of rehearing en banc). With utmost respect, I disagree. In both cases, the panel read the statute to confer discretion on the Attorney General that the Attorney General either had not claimed, had not exercised, or both. That conclusion was of special significance to this litigation, because if the statute itself was the only basis for the challenged conditions—rather than the Attorney General's exercise of discretion conferred by the statute—then the statute's language must independently live up to the Spending Clause's requirement that conditions on federal funds be "unambiguous[]." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Thus, as Judge Pooler explains, "the fact that the DOJ 'unambiguously' sets out the grant requirements is of no moment, because the conditions are to be set by Congress." Ante at 8 (Pooler, J., dissenting from the denial of rehearing en banc); *see* Br. of Former Grant Administrators as *Amici Curiae* at 2 ("The defining characteristic of a mandatory grant is that Congress, not the agency, determines who receives grant funds and in what amount."). In my view, the statutory analysis set forth by Judge Pooler and the considerations noted in this dissent should have led us to rehear this case en banc.

8

ambiguous should conclude that the challenged conditions cannot be imposed on Plaintiffs consistent with the Constitution.

As Judge Cabranes has rightly observed, and as Judge Lohier's opinion makes manifest, "the decision not to convene the en banc court does not necessarily mean that a case either lacks significance or was correctly decided. Indeed, the contrary may be true." *United States v. Taylor*, 752 F.3d 254, 256 (2d Cir. 2014) (Cabranes, J., dissenting from the denial of rehearing en banc). For the reasons stated by Judge Pooler and Judge Lohier, I believe the contrary is true here. Indeed, I share my colleagues' view that this case is of exceptional importance, *see* ante at 8 n.5 (Lohier, J., concurring in the denial of rehearing en banc); ante at 3 (Pooler, J., dissenting from the denial of rehearing en banc), a view that Judge Cabranes all but endorses in his concurring opinion, *see* ante at 1 (Cabranes, J., concurring in the denial of rehearing en banc).

All of my participating colleagues also seem to agree that Supreme Court review is now inevitable. *See* ante at 5 (Cabranes, J., concurring in the denial of rehearing en banc); ante at 8 (Lohier, J., concurring in the denial of rehearing en banc); ante at 15 (Pooler, J., dissenting from the denial of rehearing en banc). Of

course, that will be for the Supreme Court to decide. Now that our Court has declined to rehear this case, I hope my colleagues are right.

For these reasons, I respectfully dissent from today's order denying rehearing en banc.